*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0120P (6th Cir.)
File Name: 00a0120p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

EVAN P. SINGER,

      *Petitioner,*

    *v.*

    No. 98-4252

JANE F. GARVEY,
Administrator, Federal
Aviation Administration,

      *Respondent.*



On Petition for Review of an Order of the National
Transportation Safety Board.
No. SE-15331

Argued: September 14, 1999

Decided and Filed: April 4, 2000

Before: BATCHELDER and GILMAN, Circuit Judges;
HOOD[*], District Judge.

---

[*]The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

_____

**COUNSEL**

**ARGUED:** Ames Davis, WALLER, LANSDEN, DORTCH & DAVIS, Nashville, Tennessee, for Petitioner. James W. Tegtmeier, OFFICE OF THE CHIEF COUNSEL, FEDERAL AVIATION ADMINISTRATION, Washington, D.C., for Respondent. **ON BRIEF:** Ames Davis, Kristin M. Coile, WALLER, LANSDEN, DORTCH & DAVIS, Nashville, Tennessee, for Petitioner. James W. Tegtmeier, OFFICE OF THE CHIEF COUNSEL, FEDERAL AVIATION ADMINISTRATION, Washington, D.C., for Respondent.

_____

**OPINION**
_____

ALICE M. BATCHELDER, Circuit Judge. Evan Singer petitions for review of an order of the National Transportation Safety Board ("NTSB") revoking his private pilot certificate for cheating during a knowledge test in violation of FAA Regulation 61.37(a)(6), 14 C.F.R. § 61.37(a)(6) (1999). For the reasons set forth below, the petition for review is denied.

**I.**

On June 18, 1998, Singer checked in at the Baker School of Aeronautics in Nashville, Tennessee, to test for advanced ground instructor training. The admissions coordinator and testing administrator at the school, Diane Davio, provided Singer with a copy of the testing center's regulations. These regulations provided that the use of written notes in the testing area was prohibited and that personal items such as notebooks were to remain stored out of reach of the examinee during testing. Singer read and signed the regulations.

Singer was then ushered into the testing area, a room that contained a one-way mirror and windows on two walls. As Singer began his examination, he was monitored by Davio

### 2. "Authorized"

Finally, Singer contends that the notes were not unauthorized materials. Singer maintains that the only portion of the notes that related to questions on the examination were weight and balance formulae. Because FAA Order 8080.6A allows examinees to use weight and balance formulae that are permanently inscribed on aids otherwise permitted during examinations, Singer continues, the information on the notes was "authorized" within the meaning of 14 C.F.R. § 61.37(a)(6).

This argument is unavailing. While the FAA Order may authorize weight and balance formulae that are permanently inscribed on fundamental flight planning equipment, it makes no allowance for such information in the form of written notes. Perhaps more to the point, sufficient testimony was developed during the hearing to support the NTSB's rational conclusion that the notes contained information other than the weight and balance formulae that could have aided Singer during the examination. The NTSB therefore did not act arbitrarily or capriciously in disregarding the ALJ's finding that the information on the notes was authorized.

### III.

For the foregoing reasons, the petition for review is denied.

and another proctor, Kara Moore, from the windows ten to fifteen feet to his left. Davio and Moore noticed that Singer frequently looked around during the examination. Because of this furtive behavior, the proctors focused their attention on Singer, observing him about ninety-eight percent of the time.

As Singer neared the end of his examination, another examinee entered the testing area. The newcomer was proctored by the school's maintenance instructor, Becky Duncan, who was stationed behind a window about ten feet away from Singer. Like the other two proctors, Duncan noted that Singer was looking around the testing room. Duncan observed that Singer focused on the other two proctors, and, at a moment when they were conferring on a question of paperwork, she saw Singer take a paper in his left hand and put it into his front left pocket. Duncan would later be unable to identify the color of the paper.

After witnessing Singer's act, Duncan summoned Moore to a back office. At this point, Davio turned around and saw Singer removing his left hand from his left front pocket. Duncan then explained what she had seen to Davio and Moore. Moore approached Singer after he had finished his exam and asked him to empty his pockets. From his left front pocket, Singer produced two small yellow sheets of paper and one green sheet. These notes contained a variety of aviation information, at least some of which would have been useful on the exam.

This incident was reported to the Federal Aviation Administration ("FAA"), and on July 10, 1998, the Administrator issued an Emergency Order pursuant to 49 U.S.C. §§ 44709 and 46105, revoking Singer's private pilot certificate. Singer appealed to the NTSB. The Administrator re-filed a copy of the Order as her complaint, which Singer answered. On August 20, 1998, an Administrative Law Judge ("ALJ") of the NTSB conducted a hearing.

At the hearing, Singer admitted that he had mistakenly brought the notes into the exam. He explained, however, that he had created the notes earlier in the week while studying for

a different test—the commercial pilot written examination. Singer introduced records of practice tests he had taken for this examination and correlated the notes to specific questions on the practice tests. He denied ever having taken the notes out of his pocket during the advanced ground instructor training examination. Singer's flight instructor testified that Singer was in the habit of making study notes of the kind found in his pocket on June 18, 1998.

At the conclusion of the hearing, the ALJ reversed the Administrator's order of revocation. The ALJ initially noted that the Administrator had the burden of establishing her allegations by a preponderance of the evidence. Observing that the evidence in this case was circumstantial, however, the ALJ went on to cite *Administrator v. Hart*, 3 NTSB 24, 26 (1977), for the proposition that circumstantial evidence on a particular point must be so convincing as to override any reasonable explanation to the contrary. The ALJ found that the Administrator's circumstantial evidence on the use of unauthorized materials was not sufficient to overcome the reasonable explanation for the presence of the notes in Singer's pocket. In so finding, the ALJ addressed the key piece of circumstantial evidence in the case, Duncan's testimony. Duncan "really didn't see anything," the ALJ stated. "She just saw this movement toward the pocket. She says it was paper, doesn't know what kind of paper it was. That really doesn't show use." The ALJ indicated that the Administrator could have proved use by producing Singer's exam answers and correlating them with the information on the notes.

The Administrator appealed to the NTSB. The NTSB reversed, holding that the ALJ had employed an incorrect standard of proof. The *Hart* case, the NTSB pointed out, had involved circumstantial proof of intent in a false statement action. Because intent was not an element of the offense with which Singer was charged, the NTSB continued, *Hart* was not applicable, and the correct burden of proof was therefore the usual preponderance of the evidence standard. The NTSB found that the Administrator had shown that it was more

case, has no application to violations of 14 C.F.R. § 61.37(a)(6). False statement cases typically involve a delicate determination whether the accused acted intentionally or only negligently; where circumstantial evidence is used to prove the defendant's scienter, a higher standard of proof is appropriate. This is not so where the defendant stands accused of using unauthorized materials during an examination. In such cases, the accused's actions speak for themselves; intent is not an element of the offense of cheating on a knowledge examination. The NTSB could therefore reasonably hold that use of unauthorized materials could be proved by a preponderance of circumstantial evidence.

The NTSB also correctly observed that the ALJ had applied an unduly limited definition of "use" of unauthorized materials. Although Singer maintains that the NTSB misconstrued the ALJ's findings in this regard, the ALJ did in fact ask whether there was a correlation between the information on the notes and Singer's answers on the examination—an inquiry which suggests that a defendant must derive a benefit from unauthorized materials in order to have "used" them. The NTSB's contrary interpretation of its regulation—that a prohibited use is "any effort to obtain help from an unauthorized source of information or assistance, whether successful or otherwise"— is entitled to deference. *See Borregard v. NTSB*, 46 F.3d 944, 945 (9th Cir. 1995). The NTSB's construction of the term "use" is both reasonable and consistent with NTSB precedent, *see, e.g.*, *Administrator v. DeSilva*, No. SE-11297, 1993 WL 657746, at *4 (NTSB May 5, 1993); *Del Balzo v. Thompson*, No. SE-11495, 1993 WL 128059, at *2 n.7 (NTSB Apr. 6, 1993), and will not be disturbed by this court.

In conclusion, the NTSB did not act arbitrarily or capriciously in rejecting the ALJ's legal conclusion that Singer's conduct did not amount to use of the notes. The NTSB's decision reflects its determination that the ALJ applied the wrong standard of proof and an incorrect definition of the term "use." That determination is rational and in accordance with law.

## B.   Findings of Law

Singer does not seriously challenge the NTSB's purely legal conclusions regarding the correct burden of proof and the meaning of the term "use" in 14 C.F.R. § 61.37(a)(6). He does complain, however, that the NTSB arbitrarily rejected the ALJ's mixed factual and legal finding that his conduct did not amount to "use" of the notes. Similarly, Singer contends that the information on the notes was "authorized" within the meaning of the regulation. Neither of these arguments has merit.

### 1.   "Use"

The NTSB adequately explained why it rejected the ALJ's conclusion that the testimony at the hearing "really doesn't show use." The NTSB determined that the ALJ had mistakenly applied the evidentiary standard from *Administrator v. Hart*, 3 NTSB 24, 26 (1977), and that he had also applied an unduly limited definition of the term "use." This determination is reasoned and reflects attentive consideration of the ALJ's decision. *See Dodson v. NTSB*, 644 F.2d 647, 650-51 (7th Cir. 1981).

The ALJ cited the *Hart* case for the proposition that the FAA's circumstantial proof must be "so compelling that no other determination is reasonably possible." Unlike this case, however, *Hart* was the product of a remand to the NTSB to make a factual finding as to a flight instructor's scienter at the time he made false entries in student pilot logbooks. Singer contends that application of the *Hart* standard in this case was appropriate because he could not have violated a regulation against using unauthorized material without intending to use those materials. He also suggests (seemingly contradictorily) that the ALJ properly adopted the preponderance of the evidence standard early in his decision.

As an initial matter, it is clear that the ALJ employed the elevated *Hart* standard—he so affirmed during a colloquy with the FAA's attorney after rendering his decision. The NTSB could rationally conclude that *Hart*, a false statement

likely true than not that Singer had handled the notes in the testing area. This action, the NTSB concluded, constituted "use." Taking issue with the ALJ's suggestion that the Administrator should have demonstrated a correlation between Singer's answers and the information on the notes, the NTSB wrote: "We think the unauthorized material was effectively 'used' when respondent, by having the notes in his hand outside of his pocket, engaged in conduct that created the potential for improper reliance on them."

Before this court, Singer argues that no substantial evidence supports the NTSB's determination that he used unauthorized materials during the Advanced Ground Instructor examination. In particular, he contends that the NTSB arbitrarily disregarded a credibility determination that the ALJ made with regard to Becky Duncan's testimony. Singer also argues that the NTSB arbitrarily ignored a negative inference that the ALJ drew against the Administrator on the basis of certain discovery issues. We address these contentions in turn.

### II.

The NTSB held that Singer violated 14 C.F.R. § 61.37(a)(6), which provides: "An applicant for a knowledge test may not . . . [u]se any material or aid during the period that the test is being given, unless specifically authorized to do so by the Administrator . . . ." This court may set aside agency action only if it finds it to be arbitrary, capricious, an abuse of discretion, or, where there has been a hearing, the agency action is unsupported by substantial evidence. *Blackman v. Busey*, 938 F.2d 659, 661 (6th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

The NTSB has plenary review authority with respect to ALJ decision making. *McCarthney v. Busey*, 954 F.2d 1147, 1154 (6th Cir. 1992). Where the NTSB reverses its ALJ, this court's role is limited to determining whether those factors which influenced the ALJ should have required the NTSB to

reach a decision different from the one that it did. *See id.* The NTSB's weighing of the facts and factors which it determines upon review, based upon substantial evidence, is not to be disturbed by this court even if we feel that a different result might be indicated. *Id.* " 'It does not matter that other reasonable conclusions are theoretically possible' (or even desirable from our standpoint)." *Id.* (quoting *Blackman*, 938 F.2d at 662).

## A. Findings of Fact

Substantial evidence supports the NTSB's factual finding that Singer took the notes out of his pocket during the examination. All three proctors observed Singer acting in a furtive manner. Duncan saw him move a paper to his left front pocket; Davio saw him remove his hand from that same pocket immediately afterward. The quality of this evidence is not much diminished by the fact that Moore and Davio did not personally witness Singer handling the notes. Moore testified that at the time of the incident she was helping Davio with a question on some paperwork, which suggests that these proctors' attention was divided. Taking this body of evidence as a whole, the NTSB could reasonably conclude that Singer had the notes in his hand outside of his pocket during the exam.

Singer nevertheless contends that in arriving at this conclusion, the NTSB arbitrarily reversed a credibility finding of the ALJ. Singer urges that the ALJ's statement that Duncan "really didn't see anything" constituted a credibility determination that Duncan did not see papers in Singer's hand. Because it is the NTSB's policy not to disturb a credibility finding "unless there is a compelling reason or the finding was clearly erroneous," *Chirino v. NTSB*, 849 F.2d 1525, 1530 (D.C. Cir. 1988), Singer argues, the NTSB broke its own rules when it relied on Duncan's testimony without supplying some sort of justification.

Singer is mistaken. When the NTSB denied a motion for reconsideration made by Singer, it specifically addressed the ALJ's statement regarding Duncan's testimony, and

concluded that it did not amount to a credibility finding. What is more, the NTSB's reading of the ALJ's statement is persuasive. Duncan testified that she saw Singer take his left hand and stick notes into his front left pocket, but admitted upon cross examination that she could not describe the color of the paper. The ALJ essentially reiterated this testimony in his statement: "She just saw this movement toward the pocket. She says it was paper, doesn't know what kind of paper it was." The ALJ did not suggest that Duncan did not see what she claimed to have seen. Rather, he concluded that, "That really doesn't show use." From this statement, it is apparent that the ALJ was making a legal conclusion—that Duncan's testimony did not suffice to establish "use" within the meaning of 14 C.F.R. § 61.37(a)(6). The ALJ did not render a credibility determination.

As a final factual matter, Singer argues that the NTSB arbitrarily disregarded a negative inference that the ALJ drew on the basis that the FAA failed to videotape the examination and failed to produce Singer's examination answers during discovery. A reading of the ALJ's opinion, however, reveals no such inference. In any event, a negative inference against the FAA would not have been warranted. FAA procedures do not require that examinations be videotaped. *See Conduct of Airmen Knowledge Tests Via the Computer Medium*, FAA Order 8080.6A, ch. 5-9(a) (December 1994). Moreover, 49 C.F.R. § 821.19(d) (1999) provides that an ALJ may draw a negative inference against a party who fails to comply with an order compelling discovery. In this case, the ALJ did not issue an order compelling production of Singer's examination answers, so an adverse inference on this basis would not have been appropriate.

In sum, substantial evidence supports the NTSB's factual findings. The ALJ did not render a credibility determination with regard to the testimony of Becky Duncan, nor did he draw an adverse inference against the FAA on evidentiary grounds. Accordingly, the NTSB did not err in concluding that Singer had taken the notes out of his pocket during the examination.