# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 6, 2009      Decided December 8, 2009

No. 08-1390

JACK RONDAL DILLMON,
PETITIONER

v.

NATIONAL TRANSPORTATION SAFETY BOARD, ET AL.,
RESPONDENTS

---

On Petition for Review of an Order
of the National Transportation Safety Board

---

*Weldon E. Patterson* argued the cause and filed the brief for petitioner.

*Agnes M. Rodriguez*, Senior Attorney, Federal Aviation Administration, argued the cause and filed the brief for respondent.

Before: GARLAND, BROWN and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*: Petitioner Jack Rondal Dillmon accuses the National Transportation Safety Board (Board) of hypocrisy—saying one thing while doing another. Dillmon

argues the Board departed from its prior decisions without adequate explanation when it affirmed the Federal Aviation Administration's (FAA's) emergency revocation of his airman and medical certificates. We agree with Dillmon: the Board has failed to exhibit the reasoned decision making we require of agencies. We therefore grant his petition for review.

I

On February 26, 1997, a jury convicted Dillmon of ten counts of bribery of a public servant, a felony in the state where he was prosecuted. A month later, on March 28, 1997, Dillmon submitted to the FAA an application for a Third Class Medical Certificate. In filling out the medical application, Dillmon had to answer "Yes" or "No" to Question 18w, which asked whether he had any "[h]istory of nontraffic conviction(s) (misdemeanors or felonies)." FAA Form 8500-8 (7-92). Despite his recent felony bribery conviction, Dillmon answered "No." In signing the form, Dillmon certified his answers were "complete and true to the best of [his] knowledge." *Id.* On May 2, 2007 and March 17, 2008, Dillmon again filled out the application to renew his medical certificate. Each time he filled out the application, he answered Question 18w "No."

In August 2008, the FAA Acting Administrator issued an emergency order revoking Dillmon's medical certificate, as well as his private pilot certificate. The order explained the Administrator had concluded Dillmon's answers to Question 18w in 1997, 2007 and 2008 violated Federal Aviation Regulation (FAR) provision 14 C.F.R. § 67.403(a)(1), which states: "No person may make or cause to be made . . . [a] fraudulent or intentionally false statement on any application for a medical certificate." Dillmon appealed the order to the

Board and requested a hearing to challenge the FAA's findings.

At an October 2, 2008 hearing before an administrative law judge (ALJ), the FAA submitted evidence of Dillmon's bribery conviction and his "No" answers to Question 18w on his 1997, 2007 and 2008 medical applications. After the FAA's presentation of evidence, the ALJ denied Dillmon's motion to dismiss and ruled the FAA had made out a *prima facie* case for the regulatory offense of intentional falsification under FAR section 67.403(a)(1). The ALJ then allowed Dillmon to present evidence and testify in his defense.

Dillmon explained why he had answered "No" to Question 18w. He said, "I have always believed and have always understood . . . any time this question has ever come up was that all [the FAA was] interested in was anything to do with drugs or alcohol." Hearing Tr. at 56–57 (Oct. 2, 2008). Dillmon described how the FAA's Aviation Medical Examiner (AME) had first informed him of this in 1990. *Id*. at 57, 76–77. He testified another AME, Dr. Van Den Berg, similarly advised him in 2007 and 2008 that Question 18w was only concerned with drug- or alcohol-related offenses. *Id*. at 66, 85–86. Dillmon submitted two letters from Dr. Van Den Berg to corroborate his testimony about their conversations in 2007 and 2008. Dillmon emphasized, "I never would have checked no if this was not the advice I was given by the designated examiner that helped me complete the form." *Id*. at 66. Finally, he testified he was "painfully aware [his] life [was] an open book when it comes to a criminal conviction," and he was "not proud of it," but it was "not something [he] would lie about or try to hide." *Id*. at 66–67.

On cross-examination by the FAA, Dillmon conceded he had never read the portion of the medical application which

provided instructions for completing Question 18w until the day before the hearing. Hearing Tr. at 79. The instructions stated, "Letter (w) . . . asks if you have ever had any other (nontraffic) convictions (e.g., assault, battery, public intoxication, robbery, etc.). If so, name the charge for which you were convicted and the date of conviction in the EXPLANATIONS box." FAA Form 8500-8 (3-99). He also admitted that when he filled out the applications in 1997, 2007 and 2008, he "knew [he] had been convicted of a non-traffic offense." *Id*. at 86–87. Finally, when asked by the ALJ how he would answer Question 18w "today," Dillmon said, "Absolutely yes." *Id*. at 88.

After the hearing, the ALJ issued his decision. He noted the central question was, "What is in the man's mind?" Hearing Tr. at 130. Of particular importance to the instant petition, the ALJ found Dillmon to be a credible witness: "My determination is that [Dillmon] was quite forthright and candid in his testimony. To me, there is quite a notable absence of any indication of an intentional falsehood . . . when he signed the no to these questions in the three applications in question 18W." *Id*. at 132. In light of Dillmon's testimony and the documentary evidence he submitted, the ALJ ruled Dillmon had successfully rebutted the Administrator's *prima facie* case of intentional falsification, concluding, "[I]t is clear to me that there's no intention on the part of [Dillmon] to falsify, let alone be fraudulent in setting forth the answers that he did to this question, 18W." *Id*. at 133. The ALJ therefore reversed the FAA's emergency revocation order.

The FAA appealed the ALJ's decision to the Board, which reversed the ALJ based on two purported errors. *Administrator v. Dillmon*, NTSB Order No. EA-5413, 2008 WL 4771937, at *4 (Oct. 28, 2008). First, the Board

concluded the ALJ erred in determining Dillmon had successfully rebutted the Administrator's *prima facie* case of intentional falsification. *Id.* Relying on several prior decisions, the Board rejected Dillmon's argument that he did not make an intentionally false statement because he believed Question 18w was only concerned with alcohol and drug convictions. Second, the Board determined the ALJ erred by requiring the Administrator to prove Dillmon had the specific intent to deceive the FAA, rather than the lesser burden of proving intent to falsify. *Id.* The Board therefore reversed the ALJ and affirmed the FAA's emergency revocation order. Dillmon petitioned this court to review the Board's decision.

## II

We are bound by the Administrative Procedure Act when we review the Board's decisions. *See Chritton v. NTSB*, 888 F.2d 854, 856 (D.C. Cir. 1989). Under 5 U.S.C. § 706(2)(E) and 49 U.S.C. § 44709(f), we adopt the agency's factual findings as conclusive if supported by substantial evidence. The agency's factual findings "may be supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view." *Chritton*, 888 F.2d at 856. We also must consider whether the agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In evaluating agency action under this standard, we "defer to the wisdom of the agency, provided its decision is reasoned and rational, and even 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Chritton*, 888 F.2d at 856 (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)).

Nevertheless, we have held that where an agency departs from its precedent, it must do so by "reasoned analysis." *Ramaprakash v. FAA*, 346 F.3d 1121, 1124–25 (D.C. Cir. 2003); *see Motor Vehicle Mfg. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 57 (1983) ("[A]n agency changing its course must supply a reasoned analysis."). As the Supreme Court recently explained, the APA does not impose a heightened standard of review upon an agency to justify its departure from precedent. *FCC v. Fox Television Stations, Inc.*, 129 S. Ct. 1800, 1810–11 (2009). To the contrary, an agency "is free to alter its past rulings and practices even in an adjudicatory setting." *Airmark Corp. v. FAA*, 758 F.2d 685, 691–92 (D.C. Cir. 1985). But we do require the agency to "display awareness that it *is* changing position" and not to "depart from a prior policy *sub silentio* or simply disregard rules that are still on the books." *Fox Television*, 129 S. Ct. at 1811. This permits us to ensure the agency's "prior policies and standards are being deliberately changed, not casually ignored." *Ramaprakash*, 346 F.3d at 1125. Reasoned decision making, therefore, necessarily requires the agency to acknowledge and provide an adequate explanation for its departure from established precedent. *See Fox Television*, 129 S. Ct. at 1811 ("[T]he agency must show that there are good reasons for the new policy."). Applying the corollary of this requirement, "agency action is arbitrary and capricious if it departs from agency precedent without explanation." *Ramaprakash*, 346 F.3d at 1124.

Dillmon argues the Board's decision diverges from its precedent in two ways: first, by reversing the ALJ's decision without addressing his credibility determination; and second, by applying an improper standard for the intent element of the offense of intentional falsification. We address these arguments in turn.

A

Dillmon argues the Board departed from its precedent when it reversed the ALJ without addressing his credibility determination in Dillmon's favor. The Board's precedent unambiguously requires it to defer to its ALJs' credibility determinations. As we have observed, "the Board's policy is not to disturb a credibility finding unless there is a compelling reason or the finding was clearly erroneous." *Chirino v. NTSB*, 849 F.2d 1525, 1529–30 (D.C. Cir. 1988) (internal quotations omitted) (affirming Board's reversal of ALJ's credibility finding in airman certificate revocation proceeding). Consequently, the Board "has overturned ALJ credibility determinations found to be inherently incredible or inconsistent with the overwhelming weight of the evidence." *Id.* at 1530 n.6.

This deferential standard of review stems from the function the ALJs perform in the adjudicative process: "As we have stated repeatedly, . . . the law judge sees and hears the witnesses, and he is in the best position to evaluate their credibility." *Daschle v. Taylor*, NTSB Order No. EA-4509, 1996 WL 738720, at *3 (Dec. 11, 1996); *see also Administrator v. Exousia, Inc.*, NTSB Order No. EA-5319, 2007 WL 2825091, at *2 (Sept. 21, 2007) ("[O]ur prior decisions make clear that we defer to the credibility determinations of our law judges, who are in the position of observing live testimony and the demeanor of witnesses, unless shown to be clearly erroneous."). Of relevance to Dillmon's petition, the Board has directed its ALJs to assume this role in revocation proceedings for intentional falsification of medical applications: "[W]e think that . . . the task facing our law judges is essentially no different from any other adjudication in which a credibility assessment concerning an individual's intent must be made." *Administrator v.*

*Barghelame*, 7 N.T.S.B. 1276, 1276, 1991 WL 321289 (Nov. 5, 1991).

The Board's adherence to this precedent has been unwavering. For instance, in *Administrator v. Roarty*, NTSB Order No. EA-5261, 2006 WL 3472333 (Nov. 21, 2006), the Board reviewed an ALJ's determination that an airman had not intentionally falsified his medical application in violation of FAR section 67.403(a)(1). The ALJ had concluded the airman's failure to disclose a prior revocation of his medical certificate when filling out the application was a negligent mistake, rather than an intentionally false answer. *Id*. at \*2. On appeal, the Board noted, "[R]esolution of credibility issues, unless made in an arbitrary or capricious manner, is within the exclusive province of the law judge." *Id*. The Board declared it "may not reverse the law judge simply because, on the appellate record, we might come to a different conclusion." *Id*. (citing *Chirino*, 849 F.2d at 1530). Although the Board reviewed the evidence from the hearing and speculated the airman might have intentionally falsified the answer, it was "constrained" to uphold the ALJ's decision because it had "no basis to characterize the law judge's credibility determination in favor of respondent [as] arbitrary or capricious." *Id*.

Turning to Dillmon's petition, we are unable to reconcile the Board's decision with its precedent concerning its review of an ALJ's credibility determination. There is no question the ALJ made an explicit credibility finding in Dillmon's favor. *See* Hearing Tr. at 132 ("My determination is that [Dillmon] was quite forthright and candid in his testimony."). Dillmon's credibility was a central issue at the hearing. In concluding Dillmon had rebutted the FAA's *prima facie* case, the ALJ relied heavily on Dillmon's testimony about what he thought Question 18w meant and about his conversations with

the AME Dr. Van Den Berg in 2007 and 2008. But when it reversed the ALJ, the Board did not even acknowledge he had made a credibility finding.

The Board's silence on this pivotal factual issue leaves us unable to determine whether it acted consistent with its precedent. *See, e.g.*, *Exousia*, NTSB Order No. EA-5319, at *2; *Chirino*, 849 F.2d at 1529–30. Its silence is particularly troubling here because, as in *Roarty*, the ALJ who presided over Dillmon's hearing believed his testimony. *Cf. Roarty*, NTSB Order No. EA-5261, at *2. In *Roarty*, the Board expressed skepticism about the airman's defense but admitted it was "constrained" by precedent to affirm the ALJ's decision. *Id.* The facts in *Roarty* appear indistinguishable from the circumstances in Dillmon's case, and the Board has not offered an explanation for these conflicting results. If a compelling reason for refusing to believe Dillmon and rejecting the ALJ's credibility assessment exists, the Board has not revealed it to us. Because the Board departs from its precedent without adequate explanation, its decision reversing the ALJ without overturning his credibility determination is arbitrary and capricious. *See Ramaprakash*, 346 F.3d at 1124–25; *see also Andrzejewski v. FAA*, 563 F.3d 796, 800 (9th Cir. 2009) (holding the Board's "failure to give the ALJ's implicit credibility determination the requisite level of deference was contrary to [the Board's] precedent and, therefore, arbitrary and capricious").

The FAA essentially concedes the Board deviated from its precedent when it argues, "To the extent in so reversing the ALJ, the Board *implicitly* overturned any of his credibility determinations, the substantial evidence in the record establishes that the [Board] had the requisite basis to do so under the foregoing standard." FAA Br. at 50 (emphasis added). The FAA thus admits the Board failed to explicitly

overturn the ALJ's credibility determination but asserts we should nevertheless interpret its decision to encompass this result. The FAA's overturning-by-implication argument is itself inconsistent with the Board's precedent. Moreover, if the Board were permitted to overturn the ALJ's credibility finding implicitly, we still would be unable to ascertain whether the Board reviewed the finding under the appropriate standard or simply ignored it. *See Fox Television*, 129 S. Ct. at 1811 (an agency must "display awareness that it *is* changing position" and not "depart from a prior policy *sub silentio* or simply disregard rules that are still on the books"). If we accepted the FAA's argument, we would have to assume the Board had engaged in reasoned decision making without confirming it actually did. This extreme level of deference is not sanctioned by the APA nor our precedent.

The FAA offers two reasons why we should not vacate the Board's order. First, the FAA argues the standard of review we should apply to the Board's decision is found in *Singer v. Garvey*, 208 F.3d 555 (6th Cir. 2000). There the court noted, "Where the [Board] reverses its ALJ, this court's role is limited to determining whether those factors which influenced the ALJ should have required the [Board] to reach a decision different from the one it did." *Id*. at 558. It is unclear to us precisely what *Singer* meant by this statement, but whatever it meant, the FAA appears to have taken it out of context. Our role is not "limited" in the manner suggested by this single sentence; we review the Board's decisions under the standards established by the APA, not according to the factors relied on by the ALJ. *Singer* acknowledges the proper standard of review in the paragraph prior to the one from which the FAA quotes. *See id*. ("This court may set aside agency action only if it finds it to be arbitrary, capricious, an abuse of discretion, or, where there has been a hearing, the agency action is unsupported by substantial evidence.").

In any event, *Singer*, while not controlling, is consistent with our holding today. The airman in *Singer* had argued the Board departed from precedent by overturning a statement by the ALJ that the airman contended was a credibility finding. *Id*. The court rejected this argument by noting the Board had "specifically addressed the ALJ's statement . . . and concluded that it did not amount to a credibility finding." *Id*. The court concluded the Board's action was consistent with its precedent because it had properly interpreted the ALJ's statement as a legal conclusion rather than a factual finding based upon the witness's reliability. *Id*. at 559 ("The ALJ did not render a credibility determination."). As noted above, the ALJ's statement about Dillmon's testimony clearly constituted a credibility determination. *Singer* therefore does not resolve the question raised by Dillmon's petition, and the FAA's reliance on it is misplaced.

Second, the FAA argues the substantial evidence in the record provided the Board with the requisite basis for overturning the ALJ's credibility determination, and, because the Board's decision is supported by substantial evidence, it therefore should be affirmed. The flaw in the FAA's argument is that the Board does not cite this same basis for reversing the ALJ. Instead, the Board reversed the ALJ purportedly because he erred by departing from the Board's precedent in two respects—an explanation we will explore below. However, even if the ALJ had arbitrarily and capriciously departed from the Board's precedent, this would not, by itself, vitiate his factual findings, including the credibility determination. The FAA's substantial evidence argument is thus a thinly-veiled attempt to rehabilitate the Board's decision by suggesting it reached the right destination, even though it chose the wrong path to get there. Although we will "uphold a decision of less than ideal

clarity," we do this only "if the agency's path may reasonably be discerned," *Chritton*, 888 F.2d at 856 (quoting *Bowman Transp.*, 419 U.S. at 286). The path the Board has taken is not the one now proposed by the FAA. We "may not accept appellate counsel's *post hoc* rationalizations for agency action." *State Farm*, 463 U.S. at 50. We therefore conclude the Board's failure to address the ALJ's credibility determination was arbitrary and capricious.

B

Dillmon's second argument is that the Board departed from its precedent by applying an improper standard for the intent element of the offense of intentional falsification. The FAA revoked Dillmon's certificates pursuant to FAR section 67.403(a)(1), which prohibits an airman from making an "intentionally false statement." This provision is similar to another FAA regulation reviewed by the Ninth Circuit in *Hart v. McLucas*, 535 F.2d 516 (9th Cir. 1976). There the Board affirmed the suspension of an airman's flight instructor certificate for making false entries in his logbook in violation of FAR section 61.59(a)(2). *Id*. at 517–18. The ALJ concluded Hart had not acted fraudulently but had made intentionally false statements. *Id*. at 518. The Board affirmed the ALJ, noting it considered a statement to be intentionally false "if the entry is factually incorrect . . . and if the maker of the incorrect statement intends to make that statement." *Id*.

On appeal, the Ninth Circuit disagreed, explaining the regulation identified two partially overlapping offenses—one for fraud and the other for intentional falsification. The fraud offense required proof of five elements: "(1) a false representation (2) in reference to a material fact (3) made with knowledge of its falsity (4) and with the intent to deceive (5) with action taken in reliance upon the representation." *Id*. at

519 (quoting *Pence v. United States*, 316 U.S. 332, 338 (1942)).  The court distinguished the offense of intentional falsification as "a lesser included offense" consisting of the first three elements of fraud: "falsity, materiality and knowledge."  *Id.*  Rejecting the Board's position, the court concluded the regulation included a *scienter* requirement that "must be construed to require actual knowledge of falsity." *Id.* at 520.  Thus, for the FAA to prove the offense of intentional falsification, "the person making the false entry must know of such falsity."  *Id.* at 519.  Subsequently, the Board and the FAA have adopted and extended *Hart*'s three-prong standard to apply to the offense of intentional falsification under FAR section 67.403(a)(1), the regulation at issue in Dillmon's petition.  *See Roarty*, NTSB Order No. EA-5261, at *2 ("The test to be applied to determine whether a statement is intentionally false is found in *Hart* . . . , which states that the elements of intentional falsification are: 1) a false representation; 2) in reference to a material fact; and 3) made with knowledge of its falsity."); FAA Br. at 25 (noting the FAA's agreement that intentional falsification is proven via *Hart*'s three-prong standard).

In his brief, Dillmon does not assert the Board completely ignored the intent element.  Indeed, the Board acknowledged *Hart*'s three-prong standard in its decision affirming the FAA's revocation of his airman and medical certificates.  *See Dillmon*, NTSB Order No. EA-5413, at *3. Instead, Dillmon contends the Board departed from its precedent by allowing the FAA to prove his intent by satisfying the lesser burden of showing negligence (he should have known his answer was false) rather than knowledge (he knew his answer was false).  *See* Petitioner's Br. at 18.

Despite the ALJ's finding to the contrary, the Board concluded Dillmon had the requisite knowledge to satisfy the

intent element of FAR section 67.403(a)(1): "Overall, [Dillmon] clearly knew that he had been convicted of a non-traffic offense." *Dillmon*, NTSB Order No. EA-5413, at \*3. The Board reached this conclusion primarily relying on Dillmon's statement during his hearing testimony that, when he filled out the medical applications, he "knew he had been convicted of a non-traffic offense." *Id*. at \*2. But there is a step missing in the Board's reasoning. Dillmon's statement establishes he was aware when he answered Question 18w that he had been convicted of felony bribery. Standing alone, however, this does not establish he knew his answer to Question 18w was false. Although Dillmon freely admitted he knew about the conviction, he also testified he understood Question 18w only required him to report drug- and alcohol-related convictions. Hearing Tr. at 56–57 ("I have always believed and have always understood . . . any time this question has ever come up was that all [the FAA was] interested in was anything to do with drugs or alcohol."). Dillmon's testimony, as credited by the ALJ, was that he did not know his answers were false because of his mistaken interpretation of Question 18w. The question for this court then is whether Dillmon's subjective understanding of the questions in the medical application is relevant to the offense of intentional falsification. The Board's precedent establishes it is, and that is the FAA's position as well. *See* Oral Arg. Recording at 13:40–14:06.

The Board previously has stated it considers the airman's subjective interpretation of the meaning of a question to be relevant: "The law judge correctly noted that the third requirement of an intentional falsification charge is that the statements must have been made 'with knowledge of their falsity.' Therefore, his finding on this element necessarily hinged on respondent's understanding of what information the question was intended to elicit." *Administrator v. Reynolds*,

NTSB Order No. EA-5135, 2005 WL 196535, at *4 (Jan. 24, 2005). *Reynolds* appears to require the FAA to prove the airman subjectively understood what the question meant. *Id*. Having announced this interpretation of the intent element in *Reynolds*, the Board was obligated to apply it consistently. *See Ramaprakash*, 346 F.3d at 1124.

Returning to Dillmon's petition, the Board diverged from its precedent by refusing, without adequate explanation, to accept his testimony that he subjectively thought Question 18w did not require him to report his felony bribery conviction. Furthermore, Dillmon's defense was based, in part, on his claim the AMEs told him what Question 18w meant, and he relied on that advice. Thus, before the Board could discount Dillmon's defense, it should have addressed the role of the FAA's AMEs in the application process. *See* Oral Arg. Recording at 20:46–21:20 (agreement by FAA counsel that AME's advice is relevant to airman's intent); *cf. Administrator v. Culliton*, NTSB Order No. EA-5178, 2005 WL 2477522, at *2 (Sept. 30, 2005) (rejecting airman's argument that he had relied on AME for advice on how to fill out medical application).

The Board reversed the ALJ on the ground he erroneously departed from its precedent in two respects. However, we conclude it was the Board, not the ALJ, that applied precedent incorrectly. The first error the Board identified was that the ALJ improperly accepted Dillmon's defense about his understanding of Question 18w. *Dillmon*, NTSB Order No. EA-5413, at *4. The Board explained it rejected Dillmon's argument because it had stated in *Administrator v. Boardman*, NTSB Order No. EA-4515, 1996 WL 748190, at *1 (Dec. 20, 1996), that an airman's failure to carefully consider a question before providing an answer did not establish a lack of intent and because it had stated in

*Administrator v. Sue*, NTSB Order No. EA-3877, 1993 WL 157467, at *2 (April 28, 1993), that Question 18w was "not confusing to a person of ordinary intelligence." *Dillmon*, NTSB Order No. EA-5413, at *4.

The Board's reliance on *Boardman* and *Sue* to reject Dillmon's defense is misplaced. Dillmon testified about what he subjectively believed Question 18w required him to disclose. *Reynolds* establishes the relevance of Dillmon's subjective understanding, and neither *Boardman* nor *Sue* contradicts this principle. *Boardman* stands for the proposition that the airman must read the question carefully before answering it. Dillmon appears to have done so here—he testified he discussed Question 18w with the AME on three occasions. *Sue* stands for the proposition that the questions on the medical application are not inherently too vague to support a finding of intentional falsification. But even in *Sue*, the Board relied on the ALJ's finding that the airman "did know . . . that what they were asking on the form he should have said yes to." *Sue*, NTSB Order No. EA-3877, at *1.

The second error the Board identified was that the ALJ departed from precedent by requiring the FAA to prove Dillmon had the specific intent to deceive the Administrator when he answered Question 18w. *Dillmon*, NTSB Order No. EA-5413, at *4. The Board claimed the ALJ contravened its decision in *Administrator v. McGonegal*, NTSB Order No. EA-5224, 2006 WL 1466922 (May 25, 2006). In *McGonegal*, the Board reversed the ALJ after concluding the ALJ had erroneously articulated the Administrator's burden of proof "at least eight times" with no indication he had applied the correct standard. *Id*. at *4. Here, by contrast, the Board has not identified a single instance where the ALJ misarticulated the burden of proof. In any event, our review of the ALJ's decision leads us to conclude he properly

distinguished between knowledge of falsity and intent to deceive.

We conclude with a caution. Although we hold the Board departed from its precedent in two respects, we do not suggest the Board must reinstate Dillmon's medical and airman certificates. On remand, the Board still must decide whether the ALJ's decision in Dillmon's favor was correct. Under its precedent, the Board may reverse the ALJ's credibility determination, so long as it does so pursuant to the appropriate standard of review. The Board may even modify this standard, but only if it does so by reasoned decision making. Furthermore, the Board is entitled to weigh the evidence and make factual determinations different from those made by the ALJ, if supported by substantial evidence. Finally, the FAA may revisit its interpretation of the intent element of FAR section 67.403(a)(1) and decide it rejects the airman's subjective interpretation of the questions in the medical application. *See Garvey v. NTSB*, 190 F.3d 571, 577 (D.C. Cir. 1999) ("[L]ike the [Board], we must defer to the FAA's interpretations of its own aviation regulations."); *but cf. Alaska Prof'l Hunters Ass'n, Inc. v. FAA*, 177 F.3d 1030, 1034 (D.C. Cir. 1999) ("When an agency has given its regulation a definitive interpretation, and later significantly revises that interpretation, the agency has in effect amended its rule, something it may not accomplish without notice and comment."). But because the Board departed from its precedent without reasoned explanation, we grant the petition for review, vacate the order, and remand for further proceedings.

*So ordered.*