**Michael Conrad RAAB, Petitioner**

v.

**Marion C. BLAKELY, Administrator Federal Aviation Administration; National Transportation Safety Board, Respondent.**

No. 07–3745.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Feb. 26, 2010.

Opinion Filed: March 16, 2010.

Michael Conrad Raab, Mahwah, NJ, pro se.

James A. Barry, Esq., Joyce Redos, Esq., Federal Aviation Administration Office of Chief Counsel, Washington, DC, for Respondent.

BEFORE: CHAGARES, STAPLETON and LOURIE,* Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

The Federal Aviation Administration ("FAA") revoked Michael C. Raab's mechanic's inspection authorization ("IA") after an aircraft that he inspected and approved for return to service crashed, killing the pilot. An Administrative Law Judge ("ALJ") of the National Transportation Safety Board ("NTSB") affirmed the decision of the FAA, and the full NTSB affirmed the ALJ's initial determination. Raab petitions for review of the order of the NTSB. We will deny the petition.

---

* Hon. Alan D. Lourie, United States Circuit Judge for the Federal Circuit, sitting by desig- nation.

## I.

Raab performed an annual inspection of a Cessna 310Q airplane, civil registration number N8FH ("the Aircraft"), and he documented seventy-seven discrepancies on the Aircraft. Raab refused to sign off on the inspection until the discrepancies were addressed and the necessary repairs were made. Discrepancy number 47 stated "elevator trim barrel worn beyond allowable limits." This language referred to a part called an elevator trim tab actuator, which is part of an airplane's flight control system that reduces the aerodynamic forces on the main controls while in flight. When Raab noted discrepancy number 47, he had only visually inspected the actuator, but had yet to perform any tests on it.

Raab used the Cessna 310Q maintenance manual checklist when he performed the inspection, and he entered check marks on the checklist when he finished inspecting each item. On this checklist, which he was using for his own purposes and which was admittedly not meant to convey any information to anyone else, Raab entered a check mark next to "Elevator and Elevator Trim," meaning that he had inspected the trim tab actuator and found it airworthy.[1] This was due to the fact that after he visually inspected the actuator and noted discrepancy number 47, he performed a more detailed inspection and determined that the bearing that was part of the rear horizontal stabilizer on the actuator was indeed within allowable limits.

Five months later, Raab returned to follow up, and he did a walk-around and visually checked all of the items on the discrepancy list. With reference to the elevator trim tab actuator, Raab checked the controls of the Aircraft by hand, but he did not physically inspect the actuator itself, because on his checklist, he had marked it as having already been inspected and found airworthy. After completing his follow-up work, Raab signed off on the inspection, certified the Aircraft as airworthy, and returned it to service. When the owner of the Aircraft arrived just over a week later to fly it back to his base, however, it crashed shortly after takeoff, killing the owner.

FAA Inspectors Thomas Mancuso and Daniel Spera inspected the wreckage the day after the accident, and Inspector Mancuso observed that the cables going to the elevator trim tab actuator were crossed, meaning that the part was rigged backwards. If the actuator cables are rigged incorrectly, the control works backwards, so that when the pilot pulls back on the yoke, the actuator tends to pull the yoke forward. Inspector Mancuso could not tell from his inspection when the elevator trim tab actuator and its cables were installed or whether Raab had performed a test during his inspection to determine whether the actuator was functioning properly. After conducting his investigation, Inspector Spera, the reporting inspector for this crash, opined that the accident occurred because the elevator trim tab actuator was rigged incorrectly.

Raab told Inspector Spera that he did not install the elevator trim tab actuator himself, but that instead a mechanic named Kevin Sisti installed the part without Raab's knowledge, and Raab did not know about this installation until the day after the accident. From this conversation with Raab, Inspector Spera understood that the elevator trim tab actuator was replaced before Raab signed off on the

---

1. "Airworthy" means that "the aircraft conforms to its type design and is in a condition for safe operation." 14 C.F.R. § 3.5(a).

inspection. Sisti corroborated this information when he told Inspector Spera that he and his mechanics indeed installed the actuator, that his mechanics rigged the actuator cables, and that this work was done prior to Raab signing off on the inspection, because it was done in preparation for the inspection. Inspector Spera did not find any records in the aircraft maintenance logbook or elsewhere indicating that any work was performed on the Aircraft between the time Raab signed off on the inspection and the time of the crash.

However, there were no entries in the aircraft maintenance logbook indicating that the elevator trim tab actuator was replaced at all, or indicating that a number of other repairs were made to the Aircraft in preparation for the follow-up inspection. The invoice that was prepared for the Aircraft's owner documenting the work that had been done, though, noted that an actuator was purchased and installed prior to Raab's second inspection of the Aircraft. Raab did not see this invoice for the annual inspection before he signed off on the Aircraft.

In the end, Inspector Spera opined that while Raab performed a thorough initial inspection of the Aircraft, documenting seventy-seven separate items that needed to be addressed, Raab did not return the Aircraft to service properly, because he did not follow up on these items. Inspector Spera based his opinion on the differences between the Aircraft maintenance logbook, the discrepancy sheets Raab prepared during his initial inspection, and the invoice for the work that was done on the Aircraft in preparation for the follow-up inspection. In Inspector Spera's opinion, Raab never looked at this paperwork, and instead only asked the mechanics what they did to the Aircraft, and signed off on what they told him. After completing his investigation of the accident, Inspector Spera concluded that Raab was not qualified to hold an IA, based on Raab's performance concerning the annual inspection of the Aircraft.

The FAA issued an emergency order revoking Raab's IA, pursuant to the governing statute, 49 U.S.C. § 44709(b). The order alleged that Raab improperly signed off on an annual inspection on the aircraft and approved its return to service when the aircraft was in an unairworthy condition, in violation of 14 C.F.R. §§ 43.13(a), 43.13(b), and 43.15(a)(1). Raab appealed the FAA's order to the NTSB, and an ALJ conducted an evidentiary hearing, at which Inspector Mancuso, Inspector Spera, and Raab testified. On the second day of the hearing, Raab testified that two expert witnesses he intended to call were not present, because, according to Raab, the FAA contacted the witnesses' employer, and the employer threatened to terminate the witnesses if they testified on behalf of Raab. Raab sought to have Inspector Spera's testimony stricken from the record as a sanction for what he alleged was a deprivation of his due process rights, but after hearing argument on both sides, the ALJ denied Raab's request. Ultimately, the ALJ affirmed the order of the FAA. Raab appealed to the full NTSB, and the NTSB issued an order denying Raab's appeal and affirming the initial decision of the ALJ. Raab now petitions this Court for review of the order of the NTSB.

## II.

The NTSB had jurisdiction pursuant to 49 U.S.C. §§ 1133 and 44709(d). We have jurisdiction pursuant to 49 U.S.C. §§ 1153 and 44709(f). We review the NTSB's factual findings according to the "substantial evidence" standard. *See* 49 U.S.C. §§ 1153(b)(3) and 44709(f). "Substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion ... taking into account whatever in the record fairly detracts from its weight." *Ickes v. Fed. Aviation Admin.*, 299 F.3d 260, 264 (3d Cir. 2002) (per curiam) (internal quotation marks and citations omitted). "The agency's factual findings 'may be supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view.'" *Dillmon v. Nat'l Transp. Safety Bd.*, ·588 F.3d 1085, 1089 (D.C.Cir.2009) (quoting *Chritton v. Nat'l Transp. Safety Bd.*, 888 F.2d 854, 856 (D.C.Cir.1989)). Furthermore, "we must rely on the ability of the hearing officer to make judgments on witnesses' credibility." *Air East, Inc. v. Nat'l Transp. Safety Bd.*, 512 F.2d 1227, 1233 (3d Cir.1975).

We must determine whether or not the agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Dillmon*, 588 F.3d at 1089 (quoting 5 U.S.C. § 706(2)(A)). "In evaluating agency action under this standard, we defer to the wisdom of the agency, provided its decision is reasoned and rational, and even uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.* (internal quotations and citations omitted).

### III.

Raab raises three arguments. First, he contends that as a matter of law, 14 C.F.R. § 43.13 does not govern here, because that provision governs "maintenance, alteration or preventative maintenance," and annual inspections do not fall within the definitions of these terms. Second, Raab contends that the FAA failed to prove that he violated 14 C.F.R. §§ 43.13(a), 43.13(b), or 43.15(a)(1), and therefore that the decision of the NTSB affirming the decision of the ALJ was not supported by substantial evidence. Raab argues that he complied with his inspection requirements, used an appropriate checklist, identified discrepancies, and ensured that the discrepancies were addressed before he signed off on the Aircraft, and thus his conduct conformed to the applicable regulations. Finally, Raab contends that his constitutional due process rights were violated when the FAA contacted Cessna, the employer of his proposed expert witnesses, which allegedly resulted in Cessna threatening to terminate the witnesses if they testified on behalf of Raab. We will address each of these arguments in turn.

### A.

■  The pertinent portions of 14 C.F.R. § 43.13 provide:

> Each person performing maintenance, alteration, or preventive maintenance on an aircraft, engine, propeller, or appliance shall use the methods, techniques, and practices prescribed in the current manufacturer's maintenance manual or Instructions for Continued Airworthiness prepared by its manufacturer, or other methods, techniques, and practices acceptable to the Administrator....

> \*       \*       \*

> Each person maintaining or altering, or performing preventive maintenance, shall do that work in such a manner and use materials of such a quality, that the condition of the aircraft, airframe, aircraft engine, propeller, or appliance worked on will be at least equal to its original or properly altered condition (with regard to aerodynamic function, structural strength, resistance to vibration and deterioration, and other qualities affecting airworthiness).

14 C.F.R. § 43.13(a) & (b). Raab contends that because these provisions govern only "maintenance," "alteration," and "preven-

tative maintenance," they are not applicable to him, because he performed an annual inspection, which is not included in the definitions of those terms.

Raab's argument is without merit. The regulations define "maintenance" as "*inspection,* overhaul, repair, preservation, and the replacement of parts, [excluding] preventive maintenance." 14 C.F.R. § 1.1 (emphasis added). By the plain meaning of the regulations, 14 C.F.R. § 43.13 applies to Raab and his inspection of the Aircraft.

### B.

In addition to the provisions of 14 C.F.R. § 43.13 quoted above, the regulations provide that "[e]ach person performing an inspection required by part 91, 125, or 135 of this chapter, shall ... [p]erform the inspection so as to determine whether the aircraft, or portion(s) thereof under inspection, meets all applicable airworthiness requirements." 14 C.F.R. § 43.15(a)(1). The regulations further provide that all repairs to an aircraft must be recorded in the aircraft's maintenance logbook. 14 C.F.R. § 43.9.

The NTSB has stated that mechanics holding IAs and performing aircraft inspections are held to a high standard of care. *See Garrelts,* 7 NTSB 208, 1990 NTSB LEXIS 89, at *4 (1990) (stating that "[t]he issue before us is not, strictly speaking, respondent's technical competence as a mechanic or as an inspector," but rather whether respondent "possess[ed] the care, judgment, and responsibility required of the holder of any FAA certificate or authorization related to aircraft maintenance"). In addition, the NTSB has recognized that the FAA's "evidence must of necessity be circumstantial in cases where an incomplete or improper assembly or repair, and inspection thereof, is not discovered until some time after the act or

omission which constitutes the regulatory violation." *Moris & Emerson,* 2 NTSB 2102, 1976 NTSB LEXIS 60, at *9 (1976) (citing *Smoligan,* 1 NTSB 786 (1969)). Finally, the NTSB has held that it is appropriate for FAA inspectors to "rely upon the accuracy of maintenance records to ensure safety of flight." *Bielstein,* 2002 NTSB LEXIS 53, at *11–12 (2002).

With these general principles in mind, we hold that substantial evidence supported the NTSB's order affirming the ALJ's decision to uphold the FAA's revocation of Raab's IA. The evidence showed that Raab identified seventy-seven discrepancies during his initial inspection of the Aircraft, and that one of those discrepancies, discrepancy number 47, related to the elevator trim tab actuator. While it was not Raab's responsibility to record the work that was done on the actuator, because Raab did not do the work himself, it was his responsibility to ensure that each of the discrepancies was addressed before he signed off on the Aircraft as being airworthy. The fact that the aircraft maintenance log did not include documentation that corrective action had been taken on the actuator should have prompted Raab to inspect the actuator carefully. By failing to verify whether there was documentation to corroborate that the discrepancy related to the elevator trim tab actuator had been repaired, Raab failed to perform the inspection in a manner acceptable to the FAA in violation of 14 C.F.R. §§ 43.13 and 43.15.

Raab contends that he should not be responsible for failing to determine that the elevator trim tab actuator had been installed incorrectly because he was unaware until after the accident that this particular maintenance had been performed. However, as stated above, the absence of any documentation indicating that work had been performed on the actu-

ator—one of the discrepancies Raab identified in his initial inspection—should have prompted Raab to once again check the actuator. In addition, had Raab checked the invoice of the work performed on the Aircraft, he would have seen that work was performed on the actuator. Thus, this argument is not persuasive.

Raab contends also that while he did write up a discrepancy for the elevator trim tab actuator, that documentation was based only on his initial observation, and that based on a subsequent test that he ran, he determined that the actuator was still within limits. Thus, Raab argues, he was not required to inspect the actuator again during his second inspection, because the part was already cleared during his initial inspection. This argument fails as well, because Raab did not annotate the discrepancy list to indicate to the mechanics that the actuator had been cleared, nor did he discuss with the mechanics that it had been cleared. Raab only made a notation on the checklist that he was using during the initial inspection, and Raab admitted that the checklist was for his information only, and was not intended to let anyone else know what had been done. Based on the list of discrepancies that Raab gave to the mechanics, the mechanics reasonably believed that the actuator needed to be repaired, and there is substantial evidence that the actuator was indeed repaired prior to Raab's second inspection of the Aircraft. The work invoice for the Aircraft showed that the actuator work was performed before Raab's second inspection, and Sisti told Inspector Spera that the work was done before the second inspection, because it was done in preparation for that inspection.

Based on the foregoing facts and circumstances, we conclude that the Board's order was supported by substantial evidence.

### C.

Raab's final argument is that the FAA violated his constitutional due process rights when it contacted the employer of his proposed expert witnesses, which allegedly ultimately resulted in Raab being deprived of the testimony of these witnesses on his behalf.

"[D]ue process requires that an individual receive 'an opportunity to be heard at a meaningful time and in a meaningful manner.'" *Cunningham v. R.R. Ret. Bd.*, 392 F.3d 567, 576 (3d Cir.2004) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). The Supreme Court has "emphasized time and again that 'the touchstone of due process is protection of the individual against arbitrary action of government.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 845, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). Supreme Court "cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense,'" and thus, "the Due Process Clause was intended to prevent government officials 'from abusing [their] power, or employing it as an instrument of oppression.'" *Id.* at 846 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 126, 129, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). In light of this case law, the Supreme Court has "spoken of the cognizable level of executive abuse of power as that which shocks the conscience." *Id.*

■ According to Raab's testimony, two expert witnesses whose names he had listed on his witness list called and advised him that they would be unable to testify. They advised him that the FAA had called Cessna a few days earlier and that Cess-

na's attorneys had decided they should not be permitted to testify.

The only evidence other than this hearsay testimony of Raab indicated that Raab had failed to produce *curricula vitae* for the witnesses in a timely fashion and that someone at the FAA called Cessna to ascertain their qualifications to testify as expert witnesses. There is no evidence, aside from Raab's conclusory assertion, that the FAA's call was intimidating in any way or was intended to intimidate. In short, the record does not establish conduct on the part of the FAA that "shocks the conscience."

Moreover, Raab has failed to show that he was prejudiced in any way by the FAA's call. He has made no proffer of the expert testimony that either of the listed witnesses would have been prepared to give, and he acknowledges that neither has first-hand knowledge of his inspection of the Aircraft.

Our decision in *Lambert v. Blackwell*, 387 F.3d 210 (3d Cir.2004), does not help Raab's cause. While we did hold in that case that "[i]ntimidation or threats from the government that dissuade a potential witness from testifying may infringe a defendant's" due process rights, we noted also that "[i]n order to violate the Constitution, the government's conduct must have 'substantially interfered' with a witness's choice to testify." *Id.* at 260. Indeed, we held that there was no due process violation where the prosecutor contacted the defendant's expert witness a week before trial, even though the defendant's attorney would not give his consent to such a contact. *Id.* at 261. In light of the fact that Raab presented no evidence that the FAA substantially interfered with his proposed witnesses' choice to testify, other than the fact that the call was made to the witnesses' em-

ployer, Raab's reliance on *Lambert* is misplaced.

IV.

For the foregoing reasons, the petition for review will be DENIED.