# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 6, 2009   Decided December 8, 2009

No. 09-1117

HAROLD B. SINGLETON,
PETITIONER

v.

J. RANDOLPH BABBITT, ADMINISTRATOR, FEDERAL AVIATION
ADMINISTRATION, ET AL.,
RESPONDENTS

On Petition for Review of an Order
of the National Transportation Safety Board

*Kathleen A. Yodice* argued the cause and filed the briefs for petitioner.

*Agnes M. Rodriguez*, Senior Attorney, Federal Aviation Administration, argued the cause and filed the brief for respondent. With her on the brief were *Peter J. Lynch*, Assistant Chief Counsel, and *Laura R. Ponto*, Counsel.

Before: GARLAND, BROWN, and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed PER CURIAM.

PER CURIAM:  The Federal Aviation Administration (FAA) revoked petitioner Harold Singleton's medical certificate and pilot's license after finding that he gave an intentionally false answer on his application for the medical certificate.  The National Transportation Safety Board affirmed the FAA's revocation order.  We conclude that the Board erred in two respects.  It wrongly suggested that Singleton's understanding of the form was irrelevant to the offense of intentional falsification.  And it granted summary judgment to the FAA without giving Singleton a chance to present evidence bearing on that understanding.  Accordingly, we vacate the grant of summary judgment and remand for further proceedings.

I

In March 2008, North Carolina police stopped Singleton at a driver's license checkpoint.  A breathalyzer test showed that he had a blood alcohol concentration of .08 or more, a level that constitutes an "implied-consent offense[]" and results in a "civil license revocation" under North Carolina law.  N.C. GEN. STAT. § 20-16.5.  Singleton was arrested and charged with the implied-consent offense, and his license was revoked for thirty days.  The revocation order was issued by the District Court Division of the General Court of Justice of Gaston County, North Carolina, and was signed by a magistrate, whom the order described as a "Judicial Official."  Revocation Order When Person Present (Mar. 14, 2008) (J.A. 158).  Singleton was also charged criminally for driving while impaired, but that charge was eventually dismissed.  *See* Appellant's Br. 18 n.7; *id.* at Addendum B.

A few months later, in June 2008, Singleton applied to the FAA for an Airman Medical Certificate.  Question 18 of the application form covers "Medical History."  At the time Singleton applied for his certificate, Question 18v was listed

under a separate subheading entitled "Conviction and/or Administrative Action History," and asked applicants to answer "Yes" or "No" to the following:

> History of (1) any conviction(s) involving driving while intoxicated by, while impaired by, or while under the influence of alcohol or a drug; or (2) history of *any conviction(s) or administrative action(s)* involving an offense(s) which resulted in the denial, suspension, cancellation, or revocation of driving privileges or which resulted in attendance at an educational or a rehabilitation program.

FAA Form 8500-8 (3-99) (J.A. 151) (emphasis added). Singleton checked "No."

On July 24, 2008, the FAA informed Singleton by letter that it had learned of the driver's license revocation. The agency stated that it was investigating whether Singleton had "intentionally provided false or fraudulent information" in his response to Question 18v, "in that [he] did not reference [his] alcohol related offense." Letter from C. Johnson to H. Singleton (July 24, 2008) (J.A. 155). Singleton responded a week later, denying that he had intentionally provided false information. He explained that he had not been convicted of any alcohol-related charges and that he "did not look upon [the revocation] as a revocation due to a *conviction* but only a part of the process." Letter from H. Singleton to C. Johnson (July 31, 2008) (J.A. 156-57). "In retrospect," he continued, "I wished that I had asked the FAA for clarification on the meaning of 'Administrative Action', however, at the time it seemed clear to me that I was not to answer 'yes' until or unless there were to be a *conviction*." *Id.* (bolding removed).

On October 2, 2008, the FAA issued an emergency order revoking Singleton's pilot's license and medical certificate. The FAA charged Singleton with violating 14 C.F.R. § 67.403(a)(1), which bars "fraudulent or intentionally false statement[s] on any application for a medical certificate."

Singleton appealed the revocation order to the National Transportation Safety Board (NTSB). On October 27, the FAA moved for summary judgment before an administrative law judge (ALJ), stating that Singleton's driving record showed that his license "was administratively revoked/suspended for a cause related to alcohol." Mot. for Summ. J. at 2 (J.A. 146). The FAA noted that Singleton knew of the revocation and failed to seek clarification about the meaning of Question 18v. "Instead," the FAA contended, "on his own, [Singleton] chose to interpret the plain language of item 18.v to require a 'yes' answer only after a conviction," and this interpretation was a "rationalization." *Id.* at 4. Singleton knew that his "no" answer was false, the FAA maintained, *id.* at 5, and summary judgment was therefore appropriate under NTSB Rule 17(d), 49 C.F.R. § 821.17(d), because there were "no material facts in dispute," *id.* at 1.

Singleton filed an opposition to the FAA's summary judgment motion on November 5, arguing that Question 18v was confusing and that the term "administrative action" was not defined on the form or in the instructions. Singleton argued that his knowledge and understanding of the meaning of Question 18v was a disputed issue of fact that ought to be resolved at a hearing. *See* Opp'n to Complainant's Mot. for Summ. J. at 2-4 (J.A. 163-65). He attached an affidavit attesting that he "did not know the events were an administrative action as asked for in Question 18.v." Singleton Aff. ¶ 6 (J.A. 170). On November 18, 2008, Singleton filed a "Supplemental Response to Pre-Hearing Order," updating the information he had previously provided about witnesses and exhibits he would offer at a

hearing. The exhibits included a page from *Black's Law Dictionary*, stating that "administrative functions or acts are distinguished from such as are judicial." BLACK'S LAW DICTIONARY 45 (6th ed. 1990), Attach. to Supplemental Resp. to Pre-Hearing Order (J.A. 187).

On November 19, the ALJ granted the FAA's motion for summary judgment. The ALJ concluded that, because Singleton had signed "court documents" attesting to the revocation, "it is patently absurd and unbelievable that he did not know that his North Carolina driver license had been administratively revoked/suspended." Am. Order Granting Acting Administrator's Mot. for Summ. J. at 5 (J.A. 202). The question and the documents reflecting the revocation, the ALJ said, "are stated in plain English." *Id.*

Singleton appealed to the NTSB. The Board's opinion first noted that its regulations permit summary judgment where "no factual issues exist" and the moving party is "entitled to judgment as a matter of law." *Administrator v. Singleton*, NTSB Order No. EA-5437 at 5-6, 2009 WL 870356 (Mar. 24, 2009) [hereinafter Board Opinion]; *see* 49 C.F.R. § 821.17(d). The Board then explained that, to sustain a charge under the intentional falsification prong of 14 C.F.R. § 67.403(a)(1), the FAA "must prove that a pilot (1) made a false representation, (2) in reference to a material fact, (3) with knowledge of the falsity of the fact." Board Opinion at 6-7.

Turning to the evidence, the Board rejected Singleton's contention that he did not know that the phrase "administrative action" covered the court-ordered revocation of his driver's license. "There is indeed a plain meaning to the term 'administrative action,'" the Board opined, "and respondent's efforts to sow confusion upon it we find unavailing." *Id.* at 8. The Board explained that "[w]hen the question is not confusing,

where the wording has a literal meaning, and where the DUI infraction at issue clearly begs candidness with the Administrator, respondent cannot claim he did not knowingly provide a false response." *Id.* The Board found that no "factual question remains" about Singleton's knowledge and that summary judgment was appropriate. *Id.*

The Board then went on to indicate that Singleton's understanding of Question 18v was not even relevant to whether he had the knowledge requisite to make an intentionally false statement under 14 C.F.R. § 67.403(a)(1). A pilot's "failure to understand a question," the Board stated, "does not establish a lack of intent to provide false information." *Id.* at 9. Singleton "knew that his driving privileges had been revoked, and he knew that the reason for that revocation was because of an alcohol-related incident." *Id.* at 8. Hence, the Board concluded, "the evidence shows that [he] was aware of the statement's falsity." *Id.*

The Board denied Singleton's appeal, and he petitioned for review in this court.

II

Our review of decisions by the NTSB is governed by the Administrative Procedure Act (APA) and the Federal Aviation Act, the latter of which sets up a "split-enforcement regime." *Garvey v. NTSB*, 190 F.3d 571, 576 (D.C. Cir. 1999). The FAA issues regulations governing air safety that it enforces against pilots -- for example, by revoking their pilot's licenses or medical certificates. *See* 49 U.S.C. §§ 44701(a), 44709(b). A pilot may appeal revocation orders to the NTSB, which makes independent findings of fact but must defer to the FAA's interpretation of its own regulations. *Id.* § 44709(d)(3); *see Garvey*, 190 F.3d at 576. Finally, a pilot may appeal a decision

of the NTSB to this court. We review such a decision under the APA's familiar arbitrary and capricious standard. 5 U.S.C. § 706(2)(A); *see Garvey*, 190 F.3d at 576-77. We are bound by the Board's factual findings if they are supported by "substantial evidence," 49 U.S.C. § 44709(f), and we too must defer to the FAA's interpretations of its own regulations, *Garvey*, 190 F.3d at 577.

We first consider the Board's interpretation of the FAA regulation prohibiting intentionally false statements on medical certificate applications. We then turn to the Board's reading of Singleton's application and its decision that the phrase "administrative action" was so clear as to warrant summary judgment in favor of the FAA.

A

The FAA regulation at issue, 14 C.F.R. § 67.403(a)(1), prohibits the making of a "fraudulent or intentionally false statement" on an application for a medical certificate. The leading case interpreting that phrase is *Hart v. McLucas*, which explained that the elements of intentional falsity were "(1) a false representation (2) in reference to a material fact (3) made with knowledge of its falsity." 535 F.2d 516, 519 (9th Cir. 1976) (internal quotation marks omitted). *Hart* held that an intentionally false statement -- unlike a fraudulent statement -- did not require "intent to deceive." *Id.* But it rejected the FAA's and NTSB's contention that not even "knowledge of falsity" was required, explaining that the regulation "explicitly includes an intent requirement" and hence requires "reference to the mental state of the person who makes the entry." *Id.* Thereafter, both the FAA and the NTSB adopted *Hart*'s standard as their own for intentional falsification cases like

Singleton's. *See Dillmon v. NTSB*, No. 08-1390, slip op. at 13 (D.C. Cir. Dec. 8, 2009).[1]

The NTSB invoked *Hart* when it explained what was required to sustain a charge against Singleton. But it concluded that the "knowledge" element of intentional falsity was satisfied because Singleton knew his license had been revoked for an alcohol-related incident. Board Opinion at 8. Whether Singleton knew that the question asked him to report that particular type of revocation was of no moment, the Board suggested, for "failure to understand a question . . . does not establish a lack of intent to provide false information." *Id.* at 9.

Singleton contends this was error, and we agree. As we held in *Dillmon v. NTSB*, under Board law a pilot's understanding of a question is not irrelevant to whether he offered an intentionally false answer under § 67.403(a)(1). *See Dillmon,* slip op. at 14-15. Rather, § 67.403(a)(1) requires proof that the "airman subjectively understood what the question meant." *Id.* at 15. The Board's contrary view in this case is inconsistent with its own precedent. As the Board explained in *Administrator v. Sue*, intentional falsification "requires actual knowledge of the false statement." NTSB Order No. EA-3877, 1993 WL 157467, at *1 (Apr. 28, 1993). There, the Board went on to explain that the actual knowledge requirement was satisfied because an ALJ found that the pilot "did know . . . that what they were asking on the form he should have said yes to." *Id.* (internal quotation mark omitted). Likewise, in *Administrator v. Robbins*, the Board explained that the "issue for the law judge was whether respondent knew he was giving false

---

[1]Although *Hart* itself interpreted a regulation related to fraudulent or intentionally false entries in logbooks, the FAA and the Board adopted its requirements for purposes of § 67.403(a)(1) as well. *See Dillmon*, slip op. at 13.

answers." NTSB Order No. EA-4156, 1994 WL 159899, at *3 (Apr. 17, 1994). In *Robbins*, the ALJ had properly determined that the respondent did know, but only after "question[ing] [him] extensively regarding both his intentions and his understanding of the application questions" and concluding that the respondent's "explanation was not credible." *Id.* at *4. The Board repeated this point in *Administrator v. Reynolds*, stating that the knowledge required for intentional falsification "necessarily hinge[s] on [a pilot's] understanding of what information the question was intended to elicit." NTSB Order No. EA-5135, 2005 WL 196535, at *4 (Jan. 24, 2005).

This series of cases alone would warrant remanding, for "agency action is arbitrary and capricious if it departs from agency precedent without explanation." *Ramaprakash v. FAA*, 346 F.3d 1121, 1124 (D.C. Cir. 2003); *see Dillmon*, slip op. at 14-15. But there is yet another reason to reject the Board's interpretation of intentional falsity: the FAA does not share it. As FAA counsel confirmed, the FAA's position is that knowledge of falsity under § 67.403(a)(1) depends on the pilot's understanding of the question. Oral Arg. Recording at 24:55-25:03; *see Dillmon*, slip op. at 14. The NTSB is "bound by all validly adopted interpretations of laws and regulations the [FAA] carries out . . . unless the Board finds an interpretation is arbitrary, capricious, or otherwise not according to law." 49 U.S.C. § 44709(d)(3); *see Garvey*, 190 F.3d at 576. Section 67.403(a)(1) is the FAA's regulation, and its interpretation is plainly reasonable. Hence, the intentional falsification prong of § 67.403(a)(1) requires the FAA to show -- and the NTSB to find -- that a pilot understood the question to which he or she provided an allegedly false answer. *Dillmon*, slip op. at 14-15.

B

That a pilot had the requisite subjective understanding will often be apparent from circumstantial evidence. And we will uphold the Board's finding of a pilot's knowledge of falsity from circumstantial evidence if supported by substantial evidence. *See Erickson v. NTSB*, 758 F.2d 285, 288 (8th Cir. 1985) ("[T]he Board's inference from circumstantial evidence that [the pilot] knowingly made false entries was not an impermissible step if supported by substantial evidence."). Thus none of the foregoing is inconsistent with the NTSB's view that "introducing the medical applications and the record of conviction" can constitute "sufficient prima facie proof of the violation" of § 67.403(a)(1). *Administrator v. Manin*, NTSB Order No. EA-4303, 1994 WL 702136, at *3 (Dec. 7, 1994). So too, the NTSB may be warranted in proceeding by summary judgment in that circumstance. As we have noted, the NTSB's rules permit summary judgment if "there are no material issues of fact to be resolved." 49 C.F.R. § 821.17(d). In the past, the FAA and NTSB have suggested that credibility hearings are the norm in intentional falsification cases because factual determinations about knowledge do not readily lend themselves to adjudication on paper. *See Administrator v. Johnston*, NTSB Order No. EA-5414, 2008 WL 4771936, at *1 (Oct. 28, 2008); *Sue*, NTSB Order No. EA-3877, 1993 WL 157467, at *2; *Administrator v. Barghelame*, 7 N.T.S.B. 1276, 1276 (1991). Nonetheless, where a question is sufficiently clear and the proffered explanation of misunderstanding sufficiently implausible, it may be true that no reasonable factfinder could credit the explanation.[2] In such a case, no hearing would be

---

[2] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that, under the Federal Rules of Civil Procedure, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [factfinder] could

required.

But Singleton contends that this is not such a case. Question 18v did not require him to report *every* revocation of his driving privileges. Rather, it required him to indicate whether he had a "history of any conviction(s) or administrative action(s)" that resulted in revocation. FAA Form 8500-8 (J.A. 151). The FAA does not contend that Singleton's revocation resulted from a "conviction." *See* Mot. for Summ. J. at 2, 4 (J.A. 146, 148); Appellee's Br. 23. This leaves only the possibility that it resulted from an "administrative action." And Singleton maintains that he did not understand that the court-ordered civil revocation of his driver's license constituted an "administrative action."

Singleton's reading is not inherently implausible. In this court, "administrative" action is typically distinguished from "judicial" action and refers to action by an agency. *See, e.g.*, *Moore v. District of Columbia*, 907 F.2d 165, 168 (D.C. Cir. 1990) (en banc); *Hastings v. Judicial Conference*, 770 F.2d 1093, 1102 (D.C. Cir. 1985) (citing *Chandler v. Judicial Council*, 398 U.S. 74, 88 n.10 (1970)); *Utz v. Cullinane*, 520 F.2d 467, 472 n.9 (D.C. Cir. 1975); *see also* LOUIS L. JAFFE, JUDICIAL CONTROL OF ADMINISTRATIVE ACTION 124, 143 (1965); Peter L. Strauss, *Revisiting* Overton Park*: Political and Judicial Controls Over Administrative Actions Affecting the Community*, 39 UCLA L. REV. 1251, 1257 (1992). Congress has made the same distinction. *See* 42 U.S.C. § 9627(i) (stating that the "exemptions provided in this section shall not affect any concluded judicial or administrative action or any pending

---

return a verdict for the nonmoving party"); Board Opinion at 6 (noting that the NTSB has "historically considered the Federal Rules . . . to be instructive in determining whether disposition of a case via summary judgment is appropriate").

judicial action"). Nor is this understanding confined to judges and legislators. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 28 (1976) (defining "administrative law" as "law dealing with . . . authorized agencies in the executive branch of government"). The FAA insists that Singleton's interpretation is "indefensible" and "incredible," Appellee's Br. 29 (internal quotation marks omitted), but the agency's assertion does not make it so. Likewise, the Board's decision repeatedly proclaims that the term has a "plain" or "literal" meaning, Board Opinion at 8, but it never identifies what that meaning is or why it includes a court-ordered revocation. Nor do the instructions for Question 18v provide any illumination. *See* Instructions to Form 8500-8 (J.A. 182).

There is no dispute that Singleton's license was revoked by a "judicial official." The Board uses those words in its decision, Board Opinion at 4, as does the North Carolina revocation form itself, Revocation Order When Person Present (J.A. 158). The Board also refers to the revocation as a "*court* order revoking his driver's license." Board Opinion at 3 (emphasis added). Under these circumstances, Singleton's affidavit, averring that he did not understand the revocation to be an administrative action, raised a genuine issue of material fact as to his knowledge of falsity. Summary judgment was thus inappropriate under the Board's regulation, 49 C.F.R. § 821.17(d), and it was arbitrary and capricious for the Board to find otherwise, *see Rogers Corp. v. EPA*, 275 F.3d 1096, 1097 (D.C. Cir. 2002).

None of this precludes the NTSB from finding, after a hearing, that Singleton did understand that Question 18v called for a "yes" answer in the circumstances of his case.[3] Nor do we

---

[3]At oral argument, Singleton made clear that he does not challenge the NTSB's finding that Question 18v was intended to call

cast doubt on the FAA's ability to impose penalties when a pilot's driver's license is revoked for an alcohol-related offense, regardless of who issues the revocation or what the pilot knows or intends. *Cf.* 14 C.F.R. § 61.15(c)(2), (d) (providing that a pilot's license or certificate may be revoked after two alcohol-related driver's license suspensions within three years). The problem in this case is that the FAA did not purport to revoke Singleton's pilot's license for the underlying offense, but rather for intentionally providing false information on an application form.

## III

We conclude that it was arbitrary and capricious to deny Singleton a hearing at which he could offer evidence that he did not understand the phrase "administrative action" to include a court-ordered revocation of his driver's license. Accordingly, we grant the petition for review, vacate the NTSB's summary judgment order, and remand for further proceedings consistent with this opinion.

*So ordered.*

---

for a "yes" answer in his case, i.e., that the FAA regarded his revocation as an administrative action. He challenges only the NTSB's finding that he understood that to be so. Oral Arg. Recording at 8:33-9:42.