# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 23, 2011  Decided November 15, 2011

No. 10-1326

KENNETH DON COOPER,
PETITIONER

v.

NATIONAL TRANSPORTATION SAFETY BOARD
AND FEDERAL AVIATION ADMINISTRATION,
RESPONDENTS

On Petition for Review of an Order
of the National Transportation Safety Board

*Gary Bellair* argued the cause and filed the brief for petitioner.

*Agnes M. Rodriguez*, Senior Attorney, Federal Aviation Administration, argued the cause and filed the brief for respondents.

Before: ROGERS, GARLAND and BROWN, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*:  Kenneth Cooper seeks review of the National Transportation Safety Board's order affirming the

emergency revocation of his airman and medical certificates, which are required to operate an aircraft, *see* 49 U.S.C. §§ 44703, 44709. The revocation was based on the conclusion that he made an intentionally false statement on his medical certificate application when he failed to disclose an arrest for an alcohol-related motor vehicle incident. Cooper contends that the Administrator of the Federal Aviation Administration ("FAA") failed to prove intent because he had reported the arrest and suspension to the FAA almost two years earlier and hence lacked any motive to falsify his answer on the application. The Board ruled that Cooper's admitted failure to read the question before answering it constituted willful disregard for truth or falsity, and he thus had intentionally made a false statement in his application, in violation of 14 C.F.R. § 67.403(a)(1). Because the willful disregard standard articulated in *Administrator v. Boardman*, NTSB Order No. EA-4515, 1996 WL 748190, at \*1 (Dec. 20, 1996), and endorsed by the FAA is a reasonable interpretation of the regulation, the Board's deference to the FAA's interpretation of its regulation was not arbitrary or capricious, an abuse of discretion, or contrary to law. Accordingly, we deny the petition for review.

## I.

Pursuant to "the split-enforcement regime" of the Federal Aviation Act, 49 U.S.C. §§ 40101 *et seq.*; *Garvey v. NTSB*, 190 F.3d 571, 573 (D.C. Cir. 1999), which divides rulemaking and adjudicatory authority between the FAA and the Board, *see* 49 U.S.C. § 44701(a); *id.* § 1133, the FAA promulgated medical certification procedures for airmen, 14 C.F.R. § 67.403.[1]

---

[1] 49 U.S.C. § 44703 on airman certificates provides:

The [FAA] shall issue an airman certificate to an individual when the [FAA] finds, after investigation, that the individual

Subsection (a) provides: "No person may make or cause to be made – (1) [a] fraudulent or intentionally false statement on any application for a medical certificate . . . ." *Id.* Subsection (b) provides making such a statement "is a basis for – (1) suspending or revoking . . . medical certificates." *Id.* § 67.403(b)(1). Further, subsection (c) provides: "An incorrect statement, upon which the FAA relied, made in support of an application for a medical certificate" "may serve as a basis for suspending or revoking a medical certificate." *Id.* § 67.403(c)(1).

The relevant facts are undisputed. Cooper has, since at least the mid-1990s, held airman and medical certificates required to operate aircraft as a pilot and flight instructor in the United States. *See* 49 U.S.C. §§ 44703, 44709. Since about 1996, Cooper has been going to the same physician, Dr. Jack Jordan, for the medical examination and physician's certification that are required as part of the medical certificate application process. Prior to his 2010 application, Question 18v of the second class medical certification application required disclosure of "(1) any conviction(s) involving driving while intoxicated . . . ; or (2) history of any conviction(s) or administrative action(s) involving an offense(s) which resulted in the denial, suspension, cancellation, or revocation of driving privileges." On his 2008 application, Cooper answered "no" to this question.

---

is qualified for, and physically able to perform the duties related to, the position to be authorized by the certificate.

*Id*. § 44703(a). Further, an airman certificate shall "contain the terms the [FAA] decides are necessary to ensure safety in air commerce, including the terms on the duration of the certificate, periodic or special examinations, and tests of physical fitness." *Id*. § 44703(b)(1)(C).

4

Less than two months prior to his 2008 medical examination, Cooper had been arrested in Texas on February 22, 2008, incident to an alcohol-related motor vehicle offense. Texas state records show that his driver's license was suspended for six months, beginning on May 10, 2008, approximately one month after his 2008 medical exam. The order of suspension was dated May 15, 2008.

Almost two years later, on April 13, 2010, Cooper completed a new second class medical certificate application and again received a medical examination from Dr. Jordan. Unlike previous years, the new form's Question 18v added the phrase "arrest(s) and/or" in front of "conviction(s)" for alcohol-related traffic offenses. But as in previous years, despite his 2008 arrest and suspension, Cooper answered "no" to this question. The medical certificate was issued on or about April 13, 2010.

A month later, on May 19, 2010, an FAA special agent wrote Cooper advising that the Texas May 10, 2008 suspension had come to the FAA's attention, that FAA records revealed Cooper had provided "no written report of the offenses," and that on his April 13, 2010 medical certificate application he had answered "no" to Question 18v. The letter advised that "there is evidence that you intentionally provided false or fraudulent information." On May 24, 2010, Cooper responded by letter stating that Question 18v on his April 13, 2010 application "was answered in error" and that the answer was "'Yes' rather than 'No.'" With regard to the notification requirement, however, Cooper stated that "a letter was submitted to the FAA" in May 2008. He enclosed a copy of a May 12, 2008 letter addressed to the FAA stating that "[a]s per 14 C.F.R. [§] 61.15(e),"[2] he was

---

[2] Section 61.51(e) provides each person holding an airman certificate "shall provide a written report of each motor vehicle action

writing to disclose the following incident: "On May 10, 2008, an administrative action from the state of Texas occurred resulting in a driver's license suspension. This occurrence resulted from my choice to refuse a breathalyzer test on February 22, 2008."

On June 18, 2010, the FAA issued an Emergency Order of Revocation ("*Emerg. Order*"), *see* 49 U.S.C. §§ 44709(b), 46105(c), revoking Cooper's airman and medical certificates for failing to report the alcohol-related motor vehicle actions and for making a fraudulent or intentionally false statement on his medical certificate application. The Order stated: "If it is determined that your statement . . . was not intentionally false or fraudulent . . . , then your incorrect statement . . . is still the basis for revocation of your medical certificate." *Emerg. Order* at 3.

---

to the FAA" within 60 days of the action. 14 C.F.R. § 61.15(e). The section defines a "motor vehicle action" as

> (1) A conviction after November 29, 1990, for the violation of any Federal or State statute relating to the operation of a motor vehicle while intoxicated by alcohol or a drug, while impaired by alcohol or a drug, or while under the influence of alcohol or a drug;
> (2) The cancellation, suspension, or revocation of a license to operate a motor vehicle after November 29, 1990, for a cause related to the operation of a motor vehicle while intoxicated by alcohol or a drug, while impaired by alcohol or a drug, or while under the influence of alcohol or a drug; or
> (3) The denial after November 29, 1990, of an application for a license to operate a motor vehicle for a cause related to the operation of a motor vehicle while intoxicated by alcohol or a drug, while impaired by alcohol or a drug, or while under the influence of alcohol or a drug.

*Id.* § 61.15(c).

Cooper timely appealed to the Board's Office of Administrative Law Judges.

Cooper testified before an administrative law judge ("ALJ") that at the time he filled out the medical certificate application he had not been aware of the change in Question 18v, that he had not read the question, and that he had simply filled out the new form the same way he had filled out the old one. He explained that Dr. Jordan's nurse would provide him with his prior medical certificate application form and instruct him to fill out the new form just "like this [the old form]." He conceded that his "no" response was incorrect at the time he gave it, and that he was "aware that [he] had an arrest and a suspension when [he] filled out [his] application." When asked "[h]ad you have read that question, would you have answered yes to that question," he responded, "Yes, I would have." Cooper admitted that it was "[a] big mistake on [his] part" not to read the question before he answered it. He also testified that he was not confused by the question and that he had not consulted Dr. Jordan or anyone else for guidance in filling out the form.

The ALJ determined the FAA had proved that revocation of Cooper's medical certificate was appropriate under 14 C.F.R. § 67.403(c)(1), inasmuch as his answer to Question 18v was false, but found Cooper did not violate section 61.15(e) (notification requirement) or section 67.403(a)(1) (prohibiting intentionally false statements). The ALJ credited the testimony of Cooper and his son that Cooper had sent the May 12, 2008 letter reporting the arrest and suspension to the FAA, noting that there had been nothing offered to discredit that testimony except for the fact that the FAA does not have the letter "at this time." The ALJ concluded that "there has not been shown any evidence of the scienter required of an intent to falsify." The FAA sought review of the ALJ's *scienter* ruling by the Board, arguing that the ALJ erred in concluding that the FAA had failed to prove

that Cooper intended to answer Question 18v falsely, citing Board precedent.

The Board granted the FAA's appeal on *scienter* and reversed the ALJ. *Administrator v. Cooper*, NTSB Order No. EA-5538, 2010 WL 3358808, at *1 (Aug. 18, 2010) ("*Cooper Order*"). It recited the applicable standard to prove intentional falsification, as set forth in Board precedent based on *Hart v. McLucas*, 535 F.2d 516, 519 (9th Cir. 1976). It also noted its discussion on remand from this court in *Administrator v. Dillmon*, NTSB Order No. EA-5528, 2010 WL 2715714 (June 30, 2010) ("*Dillmon on remand*"), stating that it would consider an ALJ's credibility determination regarding an airman's claim that he had been subjectively confused by a question and thus did not knowingly make a false statement on a certificate application. *See Cooper Order*, 2010 WL 3358808, at *3. But, the Board acknowledged, "*Dillmon* is not directly on-point" because unlike Dillmon, who said that he read the question but was confused by it, Cooper "admits that he did not read [Q]uestion 18v," *id.*, that he had not been confused by the question, *id.* at *3 n.8, and that had he read the question he would have answered "Yes," *id.* at *3. The Board concluded that the ALJ's *scienter* finding lacked "meaningful analysis of the key underpinnings," *id.*, and was "directly contrary to *Boardman*," *id.* at *4, in which the Board had stated that a "willful disregard for truth or falsity" was sufficient to show intentional falsification. Observing that "[m]uch like the case at issue here, in *Boardman*, the respondent testified he simply copied the answers from a previous application," *id.* (citing *Boardman,* 1996 WL 748190, at *3 n.4), the Board "reiterate[d] . . . that a failure to read a question before answering it renders the entire medical certificate application process pointless, and does not provide a defense to a charge" of intentional falsification, *id.* The Board affirmed the emergency revocation of Cooper's airman and medical certificates, citing precedent

reflecting the FAA's interpretation that revocation of all certificates is the appropriate sanction for violating section 67.403(a)(1). *Id.* at *4 & n.12 (citing *Administrator v. Culliton*, NTSB Order No. EA-5178, 2005 WL 2477522, at *6–7 (Sept. 30, 2005); *Administrator v. McCarthney*, NTSB Order No. EA-3245, 1990 WL 339193, at *3 (Dec. 28, 1990)). Cooper petitions for review.

## II.

Section 67.403(a)(1) of the FAA's regulation prohibits the making of a "fraudulent or intentionally false statement" on a medical certificate application. 14 C.F.R. § 67.403(a)(1). Intentional falsification has three elements: (1) a false representation (2) of a material fact (3) made with knowledge of the falsity. *See Manin v. NTSB*, 627 F.3d 1239, 1243 (D.C. Cir. 2011); *Dillmon v. NTSB*, 588 F.3d 1085, 1093 (D.C. Cir. 2009); *accord Hart*, 535 F.2d at 519. Cooper does not deny the falsity of his response to Question 18v, nor that his false response was in reference to a material fact. Rather, he contends that the FAA was required — and failed — to establish that he knew that his answer to Question 18v on the 2010 medical certificate application was false. He maintains that applying *Boardman*'s "willful disregard" standard to prove an intent to knowingly falsify an answer "defies logic" where the prior self-report of the arrest and suspension of his driving privileges "negates any rationale for an intentional falsification of his answer to Question 18v." Pet'r's Br. 9.[3]

Our review of the Board's order is, as Cooper acknowledges, limited to determining whether the Board's

---

[3] Cooper briefly raises the issue of Board deference to ALJ credibility determinations, but he neither elaborates on the point nor challenges any factual findings. *See* FED. R. APP. P. 28(a)(9)(A).

decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), understanding that the Board's findings need only be supported by substantial evidence, *id.* § 706(2)(E); *see also id.* § 557(b). A reviewing court will "defer to the wisdom of the agency, provided the decision is reasoned and rational . . . ." *Dillmon*, 588 F.3d at 1089 (quoting *Chritton v. NTSB*, 888 F.2d 854, 856 (D.C. Cir. 1989) (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974))). Moreover, the FAA's interpretation of its "regulation is to be accorded deference in judicial deliberations," unless it "is clearly contrary to the plain and sensible meaning of the regulation." *Hart*, 535 F.2d at 520; *see also Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Garvey*, 190 F.3d at 577.

Cooper's challenge to the Board's decision presents the following question: to prove an intentional falsification in violation of 14 C.F.R. § 67.403(a)(1), must the FAA show that at the time the airman completed his application he had actual knowledge that his answer to a question on his medical certificate application was false, or is it sufficient to show that the airman intentionally failed to read the question and therefore acted in willful disregard for the truth or falsity of his answer. Cooper's brief is short on legal analysis, relying only on *Manin*, *Singleton v. Administrator*, 588 F.3d 1078 (D.C. Cir. 2009), and *Hart*. Previously this court has held that intentional falsification under section 67.403(a)(1) requires proof of "actual knowledge" of the false statement and that the airman's subjective understanding of the question in the medical certificate application is relevant to the offense of intentional falsification, adopting the Ninth Circuit's analysis in *Hart*, 535 F.2d at 519–20, of a nearly identical regulation.[4] *See Dillmon*, 588 F.3d

---

[4] At issue in *Hart* was 14 C.F.R. § 61.59(a)(2), which provides:

at 1093–94; *Singleton*, 588 F.3d at 1082; *accord Manin*, 627 F.3d at 1243–44. In *Hart*, the Ninth Circuit defined intentional falsification based on the Supreme Court's traditional definition of fraud in *Pence v. United States*, 316 U.S. 332 (1942). 535 F.2d at 519. There, the Supreme Court held that intent to defraud can be presumed from knowingly false statements. *Pence*, 316 U.S. at 339. Given this well-established definition of fraud, the Ninth Circuit concluded that it was unlikely the FAA intended any other meaning given its silence on the issue. *Hart*, 535 F.2d at 519; *see also Erickson v. NTSB*, 758 F.2d 285, 288 (8th Cir. 1985).

In all of our cases relying on *Hart* the airman had read the question in the medical certificate application and answered it in accord with his subjective understanding of what information was being sought by the questions. The court's vacatur of the Board's orders in these cases stemmed from the Board's failure to adhere to its precedent according deference to ALJ credibility findings and establishing the relevance of an airman's subjective understanding of a question. *See Manin,* 627 F.3d at 1243, 1244; *Dillmon*, 588 F.3d at 1090, 1094; *Singleton*, 588 F.3d at 1082, 1084. Cooper's case is different. It involves an antecedent circumstance: the question was not read at all, and the airman intentionally made the choice not to do so yet certified the truthfulness of his answer, which he would have known was false had he read the question. The court in *Dillmon* acknowledged

No person may make or cause to be made: ... (2) Any fraudulent or intentionally false entry in any logbook, record, or report that is required to be kept, made, or used to show compliance with any requirement for the issuance or exercise of the privileges of any certificate, rating, or authorization under this part.

*Id.*

this distinction, stating that "*Boardman* stands for the proposition that the airman must read the question carefully before answering it." 588 F.3d at 1094.

The Board, in affirming the FAA's view that Cooper had intentionally falsified his answer to Question 18v, relied (as did the FAA) on its decision in *Boardman*. In that case the Board explained:

> The very act of submitting a medical certificate application invites reliance by the FAA on the responses it contains, and the nature of the responses, every airman can be fairly presumed to appreciate, dictates whether the certificate will be issued. It seems to us that an airman who, knowing this, tenders an application that turns out to have a wrong answer to one or more of the many questions he freely chose not even to read, much less to thoughtfully answer, cannot reasonably argue that he lacked the intent to give false information, for the submission of inaccurate information is a natural and foreseeable consequence of completing an application in a manner that essentially guarantees its unreliability. We think that such an airman, having acted in a manner that could be viewed as evincing a willful disregard of the truth or falsity of the information officially submitted and, therefore, in a way reflecting contempt for the airman medical certification process, should be determined to have intended that whatever answer he gave be utilized in the review of his qualifications. Allowing the airman later to assert that a different answer would have been given had he read the questions (and, in the process, to disavow a signed assurance to the effect that they had been perused) would promote a kind of "heads-I-win, tails-you-lose" fraud in filling out applications that we

are reluctant to excuse or reward by accepting the kind of defense on which the respondent in this proceeding rests.

*Boardman*, 1996 WL 748190, at \*1.[5]

In adopting a "willful disregard" standard, the FAA and the Board embraced a doctrine akin to willful blindness,[6] not a negligence standard. This is clear from the Board's reference to

---

[5] The Board had no occasion to decide Boardman's case on the basis of "willful disregard" because it concluded that Boardman's testimony that he had not carefully read the question was not credible and that he had "read the entire question and decided to answer it falsely." *Id.* at \*2. That decision was not reviewed. Although the Board has adhered to the same interpretation of intentional falsification in distinguishing cases where an airman has read the question but did not understand the information being sought, *see Dillmon on remand*, 2010 WL 2715714, at \*4, the inquiry into the reasonableness of the FAA's interpretation that proof of willful disregard is sufficient to show intentional falsification is one of first impression for this court.

[6] In a recent Supreme Court case not cited by the parties, the Supreme Court noted that "[t]he traditional rationale for [the willful blindness] doctrine is that defendants who behave in this manner are just as culpable as those who have actual knowledge." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2069 (2011) (internal citation omitted). "Given the long history of willful blindness and its wide acceptance in the Federal Judiciary," the Court saw "no reason why the doctrine should not apply in civil lawsuits for induced patent infringement under 35 U.S.C. § 271(b)." *Id*. Absent any agency interpretation to which deference could be owed, the Court established its own requirements (based on circuit court precedent) for satisfying the *scienter* standard of the statute. *Id*. at 2070–71. Here, by contrast, we owe deference to the FAA's reasonable interpretation of the requirements for satisfying its own regulations.

13

the applicant who "freely cho[oses]" not to read a question, *Boardman*, 1996 WL 748190, at *1, and its acknowledgment that the standard does not apply to inadvertent mistakes, *id.* at *1 n.6.[7] Under this standard, the finder of fact may infer that a defendant acted knowingly if he deliberately closed his eyes to what otherwise would have been obvious to him and did not act through ignorance, mistake, or accident. *See generally United States v. Alston-Graves*, 435 F.3d 331, 337–40 (D.C. Cir. 2006); *United States v. Graham*, 431 F.3d 585, 590 (7th Cir. 2005); *see also United States v. Pomponio*, 429 U.S. 10, 12 (1976). Under the FAA's interpretation of its regulation, supported by the Board's decision in *Boardman*, where an airman intentionally chooses not to carefully read the question for which he is providing an answer that he certifies by his signature to be true, a factfinder can infer "actual knowledge" from a willful disregard for truth or falsity. A defense of deliberate inattention fails where the applicant is attesting to events about which he has actual knowledge. The FAA has fully embraced the Board's

---

[7] In *Boardman*, the Board excepted from its willful disregard standard the applicant who "inadvertently mismark[s] or overlook[s] a question on medical history that he misread or thought he had read but had not." *Id.* "It applies, rather, to those who would have their medical histories evaluated on the basis of an application they know has not been conscientiously prepared." *Id.*

reasoning,[8] and the Board could properly defer to the FAA's interpretation of its regulation.

The "willful disregard" standard is generally consistent with the traditional concept of fraud. On appeal the FAA points to common law cases extending fraud liability to circumstances where a defendant had knowing disregard for the truth or falsity of his statements. For example, in *Lehigh Zinc & Iron Co. v. Bamford*, 150 U.S. 665 (1893), the Supreme Court held that a person who "assum[es] or intend[s] to convey the impression that he has actual knowledge of the existence of such facts, when he is conscious that he has no such knowledge," is liable for fraudulent misrepresentations. *Id.* at 673. The Second Restatement of Torts states that a misrepresentation is fraudulent if the speaker "does not have the confidence in the accuracy of his representation that he states or implies." RESTATEMENT (2D) OF TORTS § 526 (1977).

Indeed, the willful disregard standard for knowledge adopted by the FAA as an interpretation of section 67.403(a)(1) is stricter than the standard that the Federal Mine Safety and Heath Review Commission adopted under section 110(c) of the Mine Act, 30 U.S.C. § 820(c),[9] to which this court deferred in

---

[8] In seeking Board review, the FAA argued that "Cooper's claimed failure to read all of the medical form prior to completing it [did not] negate[] his having not disclosed material information that he was well aware of at the time he completed the application." Complainant's Appeal Br. at 6, 9. Observing that the Board had previously addressed this issue in *Boardman*, the FAA argued that the ALJ had misapplied the standard set out in *Hart* for proving intentional falsification, distinguishing cases such as *Singleton* and *Dillmon*. *See id.*

[9] Section 110(c) provided that where a corporate operator violated the Mine Act or its standards, "any director, officer, or agent

15

*Freeman United Coal Mining Co. v. Federal Mine Safety & Health Review Commission*, 108 F.3d 358, 363 (D.C. Cir. 1997). There, the court first acknowledged that "'[k]nowingly' may convey any of a number of meanings." *Id.* It then concluded that the plain text of the statute did not answer the *mens rea* question or compel a particular answer, and that Congress had not definitively resolved the issue. *Id.* The court concluded that the definition adopted by the Federal Mine Safety and Health Review Commission, calling for individual liability where "[a] person has reason to know when he has such information as would lead a person exercising reasonable care to acquire knowledge of the fact in question or to infer its existence," *id.* (internal citation omitted), was a "fair interpretation" of "knowingly" that fell within the range of acceptable meanings and thus was entitled to *Chevron* deference, *id.* at 363–64.

So too here, for section 67.403(a)(1) does not resolve the issue and Cooper does not suggest that Congress has, *see supra* note 1. Alluding to the requirement in the FAA's guidelines for aviation medical examiners ("AMEs") that AMEs defer medical certification if an airman reports a refusal of a blood-alcohol test in a traffic incident and seek additional information before deciding whether the applicant qualifies for a medical certificate, the Board observed that a FAA regional flight surgeon had testified before the ALJ that "AMEs rely on the truthfulness of the answers that an airman provides on his or her application." *Cooper Order*, 2010 WL 3358808, at *2. Inasmuch as the examining doctor relies on the airman's answers to the questions on the form, the reasonableness of the FAA's interpretation of section 67.403(a)(1) is manifest, consistent with the FAA's purpose in promulgating air safety regulations.

---

. . . who knowingly authorized, ordered, or carried out such violation," could be held liable. 30 U.S.C. § 820(c) (1994).

Cooper does not dispute the "willful disregard" standard adopted by the Board. Indeed, he admits that he voluntarily chose not to read Question 18v. Instead he maintains that it "defies logic" to conclude that he intentionally falsified his response to Question 18v because his alleged letter to the FAA reporting his arrest and suspension "negates any rationale for an intentional falsification" of his medical certificate application. Pet'r's Br. 9. This view appears predicated on the requirement of a specific intent to deceive, but in *Dillmon* the court held that proof of intent to deceive is not required for a violation of section 67.403(a)(1). 588 F.3d at 1093–94. In view of evidence that the AMEs base their medical examinations on information provided by the airman in the medical certificate application, the Board's evaluation of the nature of the reliance on which the FAA's regulatory scheme is premised reflects the type of expertise to which the court owes deference.

Dr. Jordan, the AME who conducted Cooper's April 13, 2010 medical examination, testified that he did not remember Cooper raising the issue of his arrest and suspension for an alcohol-related motor vehicle incident during the examination, *Cooper Order*, 2010 WL 3358808, at *2, and Cooper did not suggest otherwise. As such, the doctor was afforded no opportunity to get further information from Cooper before approving his medical certificate application. Although Dr. Jordan subsequently determined that the arrest and suspension did not disqualify Cooper, the Board could reasonably conclude that such a sequence of events is not the regime contemplated by the FAA in promulgating section 67.403(a)(1). As the Board noted in *Boardman*, "[a]n individual who has discharged his obligation to furnish reliable, personal medical information in such an untrustworthy fashion has obtained by trick any medical certificate thereafter received and, at the same time, he has called in question his qualification to hold any airman certificate, since an individual possessing the care, judgment, and responsibility

required of a certificate holder would not file a medical certificate application whose truthfulness was in doubt." 1996 WL 748190, at *1 n.8.

To the extent Cooper hints that the Board was required to defer to the ALJ's findings regarding his subjective intent at the time he answered the questions on the application, *supra* note 3, he simply ignores that in his case, by contrast with those previously before the court, there is no question whether the airman's subjective understanding of a question he read negates his *scienter*. *See Dillmon*, 588 F.3d at 1094. Regardless of whether he had a motive to falsify his answer to Question 18v, by not reading the question before answering it, Cooper rendered the application unreliable and he obtained a medical certificate based on false information. And Cooper's protest that he was not aware of the change to the language of Question 18v between 2008 and 2010 when he filled out the 2010 application is a red herring.[10] By copying his answers from the 2008 application, he apparently suggests that he innocently assumed that the form had not changed and thus he accurately answered "No" to Question 18v. As noted, the 2008 application did not require disclosure of an arrest for an alcohol-related offense; it did, however, require marking "Yes" for convictions or administrative actions resulting in suspension. Cooper testified that he was aware of both the arrest and the suspension at the time he filled out the 2010 application; thus, he would have been required to check "Yes"

---

[10] The medical certificate application has 19 questions, some with multiple parts, and the type font is quite small, at least as the application form appears in the record before this court. Cooper's counsel offered at oral argument, in response to the question how one could reconcile Cooper's not reading the questions with his certification that his answers were true, that "people are lazy." Oral Arg. at 07:02. If this were a cognizable defense, then the FAA could never rely on the truthfulness of an airman's medical application.

even if the application form had not changed between 2008 and 2010.

Accordingly, because the FAA's "willful disregard" standard is a reasonable interpretation of intentional falsification under 14 C.F.R. § 67.403(a)(1), we deny the petition.