# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 12, 2013          Decided July 19, 2013

No. 12-1140

STEPHEN L. TAYLOR,
PETITIONER

v.

MICHAEL P. HUERTA, ADMINISTRATOR, FEDERAL AVIATION
ADMINISTRATION AND NATIONAL TRANSPORTATION SAFETY
BOARD,
RESPONDENTS

On Petition for Review of an Order
of the National Transportation Safety Board

*Timothy V. Anderson* argued the cause and filed the brief for petitioner.

*Amanda K. Bruchs*, Attorney, Federal Aviation Administration, argued the cause and filed the brief for respondents.

Before: GARLAND, *Chief Judge*, GRIFFITH, *Circuit Judge*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*: The Federal Aviation Administration (FAA) revoked Stephen Taylor's pilot and medical certificates because he falsely stated that he had never been arrested for drunk driving. An administrative law judge upheld the revocation order, and the National Transportation Safety Board (NTSB) affirmed. Taylor now petitions this court for review. For the reasons stated below, we deny his petition. Although this case would not otherwise warrant a published disposition, the number of similar cases that have recently come before this court[1] convince us of the need to provide clear guidance to applicants for FAA medical certificates. *See* D.C. CIR. R. 36(c)(2)(G).

I

In June 2011, Taylor submitted an application for a medical certificate using the FAA's online system, MedXPress. *See* FAA MEDXPRESS, at J.A. 24-26. The application required Taylor to answer a series of questions. Question 18v asked whether he had a history of, among other things, "any arrest(s) and/or conviction(s) involving driving while intoxicated." *Id.* at 25. Taylor answered "no." In fact, he had been arrested by the California Highway Patrol (although not convicted) for drunk driving in 2008.

On September 12, 2011, the FAA notified Taylor that it had learned of his "alcohol-related motor vehicle incident" and was conducting an investigation into whether he had violated 14 C.F.R. § 67.403(a)(1), which forbids, among other things, submitting an "intentionally false statement on any application

---

[1]*See, e.g.*, *Porco v. Huerta*, 472 Fed. App'x 2 (D.C. Cir. 2012); *Cooper v. NTSB*, 660 F.3d 476 (D.C. Cir. 2011); *Manin v. NTSB*, 627 F.3d 1239 (D.C. Cir. 2011); *Dillmon v. NTSB*, 588 F.3d 1085 (D.C. Cir. 2009); *Singleton v. Babbitt*, 588 F.3d 1078 (D.C. Cir. 2009).

for a medical certificate."  The FAA gave Taylor ten days in which to submit evidence or written statements.  On November 9, 2011, it issued an emergency order revoking Taylor's pilot and medical certificates.

Taylor appealed the order, and a hearing was held before an NTSB administrative law judge (ALJ).  At the hearing, Taylor did not deny that he gave a false answer to Question 18v.  He claimed, however, that he did so only because he had failed to read the question carefully.  He testified that he did not realize that Question 18v had been expanded, in the years since his previous medical certificate application, to include drunk-driving arrests (as opposed to convictions).  He thus clicked a "button" on the application to "Set All Blank Items in 18a - y to No" and then submitted the form without reading the text of the questions.  *Huerta v. Taylor*, NTSB Order No. EA-5611, 2012 WL 158766, at *9-10 (Jan. 9, 2012).

The ALJ did not find Taylor's testimony credible.  To the contrary, he found it unbelievable that, "after having been arrested[,] a pilot of [Taylor]'s experience[ and] intelligence, would not read the form to determine if his arrest would in any way affect the application."  *Id.* at *11.  Moreover, the ALJ agreed with the FAA that Taylor had violated § 67.403(a)(1), even according to his own testimony.  Under the FAA's established interpretation of the regulation, "where an airman intentionally chooses not to carefully read the question for which he is providing an answer that he certifies by his signature to be true, a factfinder can infer 'actual knowledge' from a willful disregard for truth or falsity."  *Cooper v. NTSB*, 660 F.3d 476, 484 (D.C. Cir. 2011).  Accordingly, "[a] defense of deliberate inattention fails where the applicant is attesting to events about which he has actual knowledge."  *Id.*

The ALJ found that, in light of this standard, he "ha[d] to agree with the [FAA]" that Taylor "hung himself" "through his own testimony." *Taylor*, 2012 WL 158766, at *10. The ALJ thus agreed with the FAA that Taylor had violated the regulation. *Id.* at *11. Further noting that he was required to defer to the FAA's choice of sanction -- here, revocation -- unless it was arbitrary, capricious, or otherwise not in accordance with law, the ALJ affirmed the FAA's emergency revocation order in its entirety. *Id.* at *12.

On appeal from the ALJ's decision, the NTSB affirmed. *Id.* at *7. Taylor petitions this court for review of the NTSB's decision.

II

Our review of the NTSB's order is "limited to determining whether the Board's decision is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' 5 U.S.C. § 706(2)(A), understanding that the Board's findings need only be supported by substantial evidence, *id.* § 706(2)(E)." *Cooper*, 660 F.3d at 481; *see Dickson v. NTSB*, 639 F.3d 539, 542 (D.C. Cir. 2011). The FAA's interpretation of its regulation is "to be accorded deference . . . unless it is clearly contrary to the plain and sensible meaning of the regulation." *Cooper*, 660 F.3d at 481 (internal quotation marks omitted); *see Auer v. Robbins*, 519 U.S. 452, 461 (1997).

1. The Board's conclusion that Taylor's behavior, by his own description, constituted a violation of 14 C.F.R. § 67.403(a)(1) was a straightforward and correct application of the regulation under the interpretation we affirmed in *Cooper v. NTSB*. Under that interpretation, an intentional failure to carefully read the questions before submitting answers is sufficient to meet the regulation's *scienter* requirement, because

such behavior amounts to a "willful disregard for truth or falsity." *Cooper*, 660 F.3d at 484. Indeed, the facts of *Cooper* are virtually indistinguishable from the instant case. Taylor, like Kenneth Cooper, answered "no" to Question 18v despite a prior drunk-driving arrest; Taylor, like Cooper, claimed that he did not know that the question's scope had been expanded; Taylor, like Cooper, said that he would not have given a false answer if he had read the question; and -- most important -- Taylor, like Cooper, admitted that he deliberately and voluntarily chose not to read the questions before answering them. *Compare Taylor*, 2012 WL 158766, at *3, *with Cooper*, 660 F.3d at 480.

Taylor attempts to distinguish his case from *Cooper* by noting that, unlike Cooper, he used the FAA's online application system, MedXPress, to submit his application. As a convenience to applicants, MedXPress provides a button that will "Set All Blank Items in 18a - y to No" if an applicant clicks on it. Taylor argues that this apparently ordinary piece of user-interface design "encourag[es] airmen not to read the questions" and "entrap[s] airmen" by implicitly "down[-]grading the importance of the questions." Taylor Br. 13.

Despite Taylor's melodramatic description of the button's significance, the reality is that it does not limit in any way the ability of applicants to read the questions carefully. The button does not obscure or hide the questions. To the contrary, the questions appear on the same screen as the button, and they can be read by anyone who can see the button. J.A. 25. The FAA's decision to provide this modest convenience, rather than requiring MedXPress users to click "yes" or "no" for each question individually, does not "entrap" applicants. Nor does MedXPress "downgrade" the questions' importance. It expressly requires the applicant to certify that "all . . . answers provided . . . on this application form are complete and true to the best of [his or her] knowledge." *Id.* at 26. And it

prominently highlights the possibility that false answers may expose the applicant to substantial criminal liability. *Id.* There is nothing about the application Taylor filled out that would justify distinguishing his case from *Cooper*.[2]

2. Taylor further argues that the FAA revoked his certificates without due process of law. His principal assertion is that the version of the governing statute, 49 U.S.C. § 44709(d)(3), that was in effect at the time of the agency proceedings in this case was unconstitutional. Taylor Br. 14.

At the time of the agency proceedings under review, § 44709(d)(3) provided that, in appeals of FAA revocation orders, the NTSB "is bound by all validly adopted interpretations of laws and regulations the [FAA] carries out and of written agency policy guidance available to the public related to sanctions to be imposed under this section unless the Board finds an interpretation is arbitrary, capricious, or otherwise not according to law." 49 U.S.C. § 44709(d)(3) (2006).[3] Taylor argues that this requirement, combined with the NTSB's practice of deferring to the FAA's *application* of its sanction policies except where arbitrary, capricious, or otherwise not in accordance with law, *see Taylor*, 2012 WL 158766, at *6-7, reduced the ALJ to a "rubber stamp for the FAA's decisions,"

---

[2]At oral argument, Taylor also argued that *Cooper* was wrongly decided, although he acknowledged that this panel is bound by it. Oral Arg. Recording at 7:37-8:24.

[3]The recently enacted Pilot's Bill of Rights amended § 44709(d)(3) to remove the specific language that Taylor challenges. *See* Pilot's Bill of Rights, Pub. L. No. 112-153, § 2(c)(2), 126 Stat. 1159, 1161 (2012). The Pilot's Bill of Rights was enacted after the NTSB decision under review in this case, and Taylor concedes that the amended provision does not apply retroactively. Oral Arg. Recording 4:05-4:40; *see* Taylor Br. 15.

Taylor Br. 17. In so doing, Taylor contends, the NTSB deprived him of due process.

When all is said and done, Taylor's argument amounts to a claim that due process entitles him to de novo review of the FAA's choice of sanction, or at least to a more searching standard of review than the one the Board applied here. But the Board's standard of review, which asks whether the FAA's action was "arbitrary, capricious, or otherwise not in accordance with law," is identical to the one that Article III courts routinely apply in reviewing agency actions of all kinds under the Administrative Procedure Act. *See* 5 U.S.C. § 706(2)(A). Although this is a "highly deferential" standard, it does not, as Taylor claims, reduce a reviewing body to "a mere rubber stamp for agency decisions." *Lead Indus. Ass'n v. EPA*, 647 F.2d 1130, 1145 (D.C. Cir. 1980). In reviewing FAA sanctions under this standard, the NTSB "consider[s] aggravating and mitigating factors" and "compare[s] factually similar cases" to determine whether the FAA's choice of sanction was appropriate. *Taylor*, 2012 WL 158766, at *6-7. It did both in Taylor's case. *Id.* This is neither "rubber-stamping" nor a violation of due process.

Nor is it uncommon for an adjudicative body to defer to the reasonable legal interpretations of an agency clothed with enforcement and rulemaking powers. *See, e.g.*, *Auer*, 519 U.S. at 461; *Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-45 (1984); *Sec'y of Labor v. Spartan Mining Co.*, 415 F.3d 82, 83 (D.C. Cir. 2005) (citing *Sec'y of Labor v. Cannelton Indus.*, 867 F.2d 1432, 1435 (D.C. Cir. 1989)). Indeed, the version of 49 U.S.C. § 44709(d)(3) that Taylor challenges represented nothing more than an ordinary exercise of Congress' power "to decide the proper division of regulatory, enforcement, and adjudicatory functions between agencies in a split-enforcement regime," *Hinson v. NTSB*, 57 F.3d 1144, 1147 n.1 (D.C. Cir. 1995) (citing *Martin v. Occupational Safety &*

*Health Review Comm'n*, 499 U.S. 144, 158 (1991)). Taylor cites no authority, and presents no persuasive rationale, to support his claim that due process requires more.

Taylor was given written notice and an opportunity to respond before the FAA's revocation order went into effect. After the order was issued, he had a full hearing and an opportunity to present his case before an ALJ, as well as an opportunity to appeal to the full Board. He then had the right to petition this court for review of the Board's order, which he did. Although we appreciate the gravity of Taylor's personal and professional interest in his lost certificates, *see Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976), there can be no dispute that he was accorded due process of law.[4]

### III

For the foregoing reasons, the petition for review is

*Denied.*

---

[4]Taylor further suggests that the interpretation of 14 C.F.R. § 67.403(a)(1) that this Circuit upheld in *Cooper* violates the Due Process Clause by effectively imposing a "strict liability standard." Taylor Br. 22. This misconstrues the standard. Disallowing a defense on the basis of *deliberate* inattention to the questions asked -- behavior that exhibits a *willful* disregard for the truth or falsity of the answers given, *Cooper*, 660 F.3d at 484 -- is very different from holding applicants strictly liable for erroneous answers.